## PARSON-GIBSON BUICK CORP. et al. v. FOX, et al.

No. 22032.   Opinion Filed Oct. 20, 1931.

Clayton B. Pierce, A. J. Follens. and Truman B. Rucker, for petitioners.

Murrah & Bohanon and M. F. Boddie, for respondents.

SWINDALL, J. On December 13, 1929, Walter C. Fox was engaged in a hazardous employment with the Parson-Gibson Buick Corporation of Okemah, Okla., in the capacity of an automobile mechanic, and on said date, while he and another employee were removing from a Buick automobile the rear bumper, which was wired on, he was struck in the right eye with a piece of wire, which he states was about the size of an ordinary clothesline and in his opinion was No. 9 wire. The other employee was working the piece of wire, which was estimated to be about 15 feet in length, back and forward in an effort to break the same. The accident occurred about 3 o'clock in the afternoon, and the claimant testified that he went to Dr. Medford at Okemah, Okla., and that the doctor removed an object about the size of the head of a pin from the right

eye; that the eye was sore and there was some bleeding; that he was off duty two or three days and then returned to work, but went with his eye bandaged up about 20 days; that about 18 or 19 years prior to the injury he was "hit in the eye with a baseball on the side of the head," and that his eye was crossed some since that time, not very much: that he could see out of the eye and never observed any difficulty in the vision until after the accidental injury on December 13, 1929, after which his eye became more crossed, and that his vision in same at date of hearing was very dim, and that he could not use his right eye in carrying on his work as an automobile mechanic. At the time he was examined by Dr. D. D. McHenry on June 4, 1930, he had what the doctor termed an amblyopic eye, or dimness of vision. The eye at the date of his examination disclosed 20/200 vision in the right eye due to nonuse. The respondent Fox was examined by Dr. Spickard, of Okemah, Okla., on December 13, 1929, at which time the doctor found a little scale on the outside surface of the cornea and there appeared a little burned place on the eyeball. The doctor does not remember whether it was over the pupil or not. From his examination of the small scale removed from the eye he was of the opinion that it was a scale off of a battery and the burn was caused by the acid from the battery. He treated the respondent Fox on December 13th, 14th, 16th, 17th, and on the 20th, and discharged him as "fully recovered." Dr. Spickard testified that he was the first doctor to treat the respondent Fox, evidently not knowing that Fox had been to see Dr. Medford, but he did not think he first examined Fox on the date of the accident. He also testified that the respondent Fox was cross-eyed before the accident. During the course of his examination he did not observe any indications that a wire had penetrated the eyeball. The only injury he found was the small acid burn caused by the scale, which appeared to have burned the surface of the eyeball to a small extent. Dr. Medford did not testify as a witness in the case. Dr. McHenry, an eye specialist of Oklahoma City, testified that respondent Fox came to him on June 4, 1930, with a history that he had run a wire the size of a match in his right eye about December 1, 1929, and the eye was blind on account of it. The doctor examined the eye and found it had been crossed for 30 years, and found the vision of the eye to be 20/200, "the usual loss of vision you get in a cross-eye." He testified that this

20/200 vision found in the eye could in no way be chargeable to the injury because had any wire or thing been run into the front of the eyeball it would have left some decided sears, and there are absolutely no scars on the front of the eyeball; that the respondent has no pathology at all, he has an amblyopic eye, dimness of vision, because the eye is not used; that if one eye is crossed more than the other, the other usually has pretty fair vision; and that a cross-eye is caused by weakening of some of the ocular muscles. The respondent Fox further testified that on November 8, 1918, he was examined for entrance in the United States Army; that the examination was made at Okemah, Okla., by Drs. Glass, May & Keys; that Dr. Glass was an eye specialist; and that he was accepted for the army and entered the military service; and that he did not sustain any injury prior or since to his eye. However, he must have been mistaken in this answer, because he testified at the same hearing that he was "hit in the eye with a baseball on the side of the head" about 18 or 19 years before the alleged accident involved in this action, and that after that his right eye was a little crossed, but not nearly so much as it was after the accident. He also testified that he had been working as an automobile mechanic for about 8 years, most of the time at Okemah, Okla., and that he worked for the Parson-Gibson Buick Corporation from about the 27th of July, 1928, until the 5th of April, 1930, at which time he was laid off on account of the business not justifying the company in continuing him at work. Respondent Fox also testified that his cross-eye did not bother him before the accident; that he had frequently gone hunting prior to the accident, that he aimed with his right eye, and that he did not observe any difficulty in his vision. Roy Fox, a brother of and about three years younger than Walter C. Fox, the respondent, testified that he had gone hunting with his brother frequently, and went quail hunting with him on or about Thanksgiving Day, prior to the date of the alleged injury, in December, 1929, and that his brother used his right eye to aim; that he knew Walter C. Fox was a little cross-eyed before the accident, but was much worse since. Dud Smith testified that he had known Walter C. Fox about 7 years; and that his eye was crossed, but "one could just barely notice it." However, the record as a whole discloses that all of the persons who came in contact with the respondent Walter C. Fox observed that his eye was crossed.

The petitioners submit this cause on petition to review upon four specifications of error:

"1. That the said order is contrary to law.

"2. That said order is not supported by any competent evidence.

"3. That the State Industrial Commission erred over the objections of petitioners, to wit: it permitted witnesses to testify as to the extent of premanent disability the claimant had in his eye when said witnesses were not qualified as experts to testify on said subject and that your petitioners cannot set out said evidence in full at this time for the reason that it has not been able to obtain a transcript of said evidence.

"4. That said order on its face makes a finding that the claimant suffered a permanent partial loss of the right eye and further found that the claimant was totally disabled and made an order allowing total disability to said eye; that said order is conflicting and erroneous in said matters."

Fox continued in his employment until April 5, 1930, after the injury in December, 1929, and did not file notice of injury and claim for compensation until May 12, 1930. His memory as well as his vision appears to be defective. In his original claim for compensation he gave the date of the injury as December 3, 1929. At the first hearing, page 9 of the transcript, the following questions were propounded to him and he gave the following answers:

"Q. In the course of your employment did you sustain an injury? A. I did. Q. On the 21st day of December, 1929? A. I did. Q. What was the nature of the injury? A. I was removing a bumper from a Buick automobile."

At page 18 of the transcript we find the following:

"By Mr. Murrah: Comes now the claimant and asks leave of the court to amend his claim for employers' first notice of injury and claim for compensation, known as the Commission's Form 3, to show that the injury herein complained of occurred on the 13th day of December, as shown by the records in this case, instead of the 3rd day of December.

"By the Court: Let the record so show."

During the hearing at Okemah, Okla., counsel for respondent Fox again moved and were granted permission to amend claim to show the alleged injuries occurred December 13, 1929 (transcript page 31).

Respondent further testified, page 16 of transcript, that he worked all the time from December 13th to April 5th. At another place he testified that he was off two days at the time he was injured, and at another he testified that he did not work four days in December during the Christmas holidays. The last-mentioned discrepancies in the testimony are such as are likely to occur; however, it appears very unusual for a mechanic to receive an injury of the nature and extent the respondent claims he received and then not be able in five months to fix the date when it occurred, or at least, without changing it from the 3rd to the 21st of the month and then having the record amended to show it happened on the 13th. If respondent did not have Dr. Medford and Dr. Spickard examine him on the same date, the injury did not occur on December 13, 1929, as the record of Dr. Spickard shows his examination and removal of scale was on December 13.

Mr. K. W. Walker, bookkeeper for the Parson-Gibson Buick Corporation, testified that the respondent Fox about December 13, 1929, complained of something being in his eye; that he had his hand over his eye; and that he, Walker, suggested that Fox go to the doctor. He did not tell Walker what was wrong, but he only said that he thought he had something in his eye, that something had struck him in the eye.

We have carefully examined the record and find that there is no competent evidence to show that any injury occurred to the right eye as a result of the accidental injury causing the permanent loss of the right eye, or the permanent loss of the use of same. Counsel for respondent in several questions propounded to Dr. Spickard assume a state of facts not disclosed by the record. They assume that if the respondent had a wire stuck through his eye, going through the pupil, would that put an eye out? They also assume if an eye specialist made an examination of the claimant on May 28, 1930, and states that he found a scar on the eye, would you conclude that that scar was caused from the injury? Also, "Now, doctor, if a hole that is jabbed in the eye should heal on the outside, you could not determine how deep this wire stuck into the eye without special magnifying glasses?" There is no evidence in the record to justify such assumptions. If the respondent is correct about the injury happening on December 13, 1929, then according to his testimony he was examined by two doctors after 3 o'clock p. m. on that day, first by Dr. Medford, who removed the foreign body about the size of a pin head, and second by Dr. Spickard, who removed a small foreign body that he took to be a scale off of a battery, and the eye showed

a burned place on the cornea. Dr. Medford did not testify, and Dr. Spickard did not testify that any wire was jabbed down into the eyeball or pierced the eyeball in any way, but, on the contrary, his evidence negatives any such conclusion. There is no evidence that the eye had healed or would be likely to heal between the time the accident occurred and date it was examined by Dr. Spickard, or if a wire had "stuck through" respondent's eye "going through the pupil," that a surgeon could not discover that fact on five examinations, the first one made the day or the day following the injury and the other four within a week and at the end of that period of time the patient is discharged as cured. There is no evidence in the record that respondent was examined by an eye specialist on May 28, 1930. If such evidence was available, it was not introduced and is not in the record and we cannot consider it. The door of the court was open for that purpose and we leave the door open so that it may be produced. Some comment was made in the record and in the respondent's brief relative to Dr. McHenry's testimony about the respondent having a cross-eye for 30 years. Dr. Spickard testified that the claimant Fox told him that he had gone to see Dr. McHenry and another specialist. Dr. McHenry could only base the history of the respondent's condition as given to him by the respondent or some one knowing the facts. He states in the commencement of his answer to a question that he gained the history of the case from the respondent. Respondent also testified that he had had a crossed eye for 18 or 19 years prior to the accident as a result of being hit by a baseball. We do not know that the answer of a specialist would be if the true facts in the case were submitted to him, but expert testimony, to be competent, must be the opinion of such a witness based upon the facts in the case as shown by the evidence. It does not tend to prove any fact upon which it is based, and before we can give any weight whatever to expert testimony we must be able to say from the evidence that the facts upon which it is based are true. Chicago, R. I. & P. Ry. Co. v. Penix, 61 Okla. 4, 159 P. 1141.

Respondent was also permitted over the objections of the petitioners to testify that at the time he was examined for the United States Army in 1918 the doctor told him that he had a 20/20 or perfect vision in the right eye. The petitioners also moved to strike out this testimony as hearsay which objection was overruled by the inspector acting for the Commission. This testimony was clearly hearsay and the objection should have

been sustained. Hearsay testimony when properly objected to is not admissible. Chicago, R. I. & P. Ry. Co. v. Boring-Kim Produce Co., 57 Okla. 495, 157 P. 351.

It is contended by the petitioners that this case falls in the class of cases requiring the cause and extent of the injury to be proved by the testimony of skilled and professional persons. In part we think this is a correct contention, and in part we cannot agree with the same. The claimant is competent to testify that he had the use of this eye and did not notice any defect of his vision in the same prior to the accident, and he may testify as to blood flowing from the injury to his eye, or that he suffered pain, or that he cannot see out of the eye since the injury, or if he can see, he may state the objects he is able to discern and how far away, and as to his symptoms, but we think that as to the probable extent and duration of the injury, it would require a skilled physician to determine whether the injuries which the respondent Fox received would likely produce a loss of vision, and if there is a loss of vision in the right eye, whether the loss is permanent. Then the Commission may determine from all the facts and circumstances whether or not the injury was the result of the accident.

Section 7290, C. O. S. 1921, authorizes the Commission to award compensation for the loss of an eye and fixes the same at 100 weeks, and states that permanent loss of the use of an eye should be considered as equivalent to the loss of such eye. However, in its award of December, 1930, the Commission in its second finding found:

"That as a result of said aforesaid accidental injury, claimant, in addition to temporary total disability had sustained the permanent loss of his right eye."

And then states that:

"The Commission is of the opinion by reason of the aforementioned facts that claimant is entitled to compensation at the rate of $18 per week from the 13th day of December, 1929, less the 5-day waiting period, to October 21, 1930, being 43 weeks and 5 days for 'permanent partial loss of the right eye' in the sum of $789, and any compensation due from October 21, 1930, to date, and continuing compensation at the rate of $18 per week until 100 weeks' compensation shall have been paid."

The claimant is not entitled to recover 100 weeks for permanent partial loss of the right eye. If there is only a permanent partial loss of use of, or sight of, an eye, then the claimant, the respondent herein, would only be entitled to recover 66 2/3 per centum of

the average weekly wage during that portion of the number of weeks in the schedule provided for the loss of such member, or sight of an eye, which the partial loss of use thereof bears to the total loss of use of such member, or sight of an eye. So, if upon a retrial the facts warrant, the Commission should allow the claimant 100 weeks if they find from competent evidence that he has sustained a permanent loss of an eye or permanent loss of the use of an eye. If they find from competent evidence that he only sustained a permanent partial loss of vision in, or use of the right eye, then his compensation must be based upon the schedule of compensation for the permanent partial loss of a member or sight of an eye. We do not not hold that the claimant must offer some competent evidence that his vision in his right eye was perfect before the alleged accidental injury occurred, but he must offer competent evidence that he has permanently lost the sight in the right eye or permanently lost the use of the right eye as the result of the alleged accidental injury, before the Commission will be authorized in awarding him compensation for 100 weeks for the loss of an eye.

Under section 7294, C. O. S. 1921, as amended by chapter 61, sec. 7, Session Laws 1923, the Supreme Court must consider the facts as found by the Commission, but from the facts thus found it may draw its own conclusions of law. McAlester Colliery Co. v. State Industrial Commission, 85 Okla. 66, 204 P. 630.

Findings of fact made by the State Industrial Commission are conclusive upon the Supreme Court where the findings are supported by competent evidence; but where a cause is presented to the Supreme Court and the findings of the Commission upon questions of fact are assailed, it becomes the duty of the court to determine, as a matter of law, whether there is any evidence to support the findings, and where it is determined that there is no evidence to support the findings, the court will disapprove and set aside the findings. Brooks v. A. A. Davis & Co., 124 Okla. 140, 254 P. 66; Employers Casualty Company v. McQuillian, 130 Okla. 116, 265 P. 644; Fitzsimmons v. State Industrial Commission, 120 Okla. 31, 250 P. 111; Lucky Kid Mining Co. v. State Industrial Commission, 110 Okla. 37, 236 P. 600.

For the reasons herein stated, the award of the State Industrial Commission is vacated and the cause remanded to the Industrial Commission, with directions to take such further action as it may deem proper not inconsistent with the views herein expressed.

RILEY, CULLISON, ANDREWS, and McNEILL, JJ., concur. LESTER, C. J., CLARK, V. C. J., and KORNEGAY, J., dissent. HEFNER, J., absent.