## M. T. SMITH & SON DRILLING CO. et al. v. CLARK et al.

No. 22666. Opinion Filed Nov. 10, 1931.

Owen & Looney, J. Fred Swanson, and Paul N. Lindsey, for petitioners.

Leo. J. Williams and M. J. Parmenter, for respondents.

CULLISON, J. This is an original proceeding in this court to review an order and award of the Industrial Commission in favor of the claimant, J. D. Clark, made and entered on July 2, 1931. The record shows that, on September 22, 1930, claimant sustained an accidental injury while in the employ of the petitioner, M. T. Smith Drilling Company. That said injury was caused by a piece of steel falling into his right eye just below the pupil. A hearing was had before the Commission July 2, 1931. At the conclusion of said hearing the Commission made the following order:

"Order.

"Now, on this 2nd day of July, 1931, the State Industrial Commission being regularly in session, this cause comes on for consideration, pursuant to a hearing had before Inspector H. O. Matchett, duly assigned by the Commission to conduct said hearing, on motion of claimant to reopen case and award further compensation, on change of condition, arising out of his accidental injury, at which hearing the claimant appeared in person and by his attorney, Leo J. Williams,

and the respondent and insurance carrier, being represented by Urey Howard, and the Commission on review of the testimony taken at said hearings, all reports on file, and the Commission being otherwise well and sufficiently advised in the premises, finds:

"(1) That it is admitted by the respondent herein that the claimant, J. D. Clark, sustained an accidental personal injury arising out of and in the course of his employment with respondent, on September 22, 1930; nature of said injury being an injury to the right eye, by foreign body entering the right eye, resulting in loss of vision.

"(2) That, as a result of said injury claimant was temporarily totally incapacitated from any kind of work from the date of injury to October 6, 1930; for which the claimant was paid the sum of $21, being the amount due for two weeks, less the five-day waiting period at the rate of $18 per week.

"(3) That, on the 13th day of December, 1930, an order was made by the trial Commissioner, Mrs. F. L. Roblin, which order was not concurred in by any other Commissioner.

"(4) That in addition to the claimant's temporary total disability, claimant has suffered the permanent partial loss of use of the right eye to the extent of 80 per cent. by reason of said injury.

"(5) That the average wage of the claimant at the time of the injury was $7 per day.

"The Commission is of the opinion: By reason of the aforementioned facts that the claimant is entitled to compensation at the rate of $18 per week for 80 weeks, amounting to $1,440 for 80 per cent. permanent partial disability to the right eye, by reason of the aforementioned injury, in addition to the sum of $21 temporary total heretofore paid.

"It is ordered: That within 15 days from this date, the respondent, or its insurance carrier, file with the Commission proper receipt or other report evidencing compliance with the terms of this order.

"Upon the adoption of the above and foregoing order the roll was called and the following voted aye:

"Doyle, Chairman.
"Fannin, C.
"McElroy, C."

Petitioners assign but one error, viz., "That there is no evidence in the record that the claimant had an 80 per cent. permanent partial loss of sight or use of the right eye." The only question raised is as to the sufficiency of the evidence to support the award. The claimant testified (R. 10) that his eyes were in good condition before the accident. The claimant further testified that a foreign body was taken from his right eye by the attending physician, which testimony is corroborated. (Physician's Report, Rec. 1.)

The claimant further testifies (R. 4):

"Q. Now, what was the nature of your injury? A. I was hammering, trying to loosen a steam line union and a piece of steel hit me in the right eye. Q. Were you taken to a doctor? A. Yes, sir. Q. What doctor? A. Dr. Williamson. Q. How long did you remain under his care? A. About 12 or 14 days,—I would not be positive as to the dates. I was released, I think,, on the 4th,—Q. On October 4th? A. Yes, sir. Q. Did you report to another doctor? A. Yes, sir. Q. What doctor was that? A. Dr. Westfall. Q. Did he treat you? A. Yes, sir. Q. For how long? A. Six days. Q. Mr. Clark, what was the condition of your eyes prior to this accident, if you know? A. Good. Q. What effect, if any, did this injury have upon your eye. A. Well, it has practically taken all the sight, and it has been aching and caused a headache through here, and a pulling sensation through my nose. (R.-5) * * * Q. Do you know whether or not there was any foreign bodies removed from your eyes? A. Yes, sir. Q. That was done by the attending physician who saw you first? A. Yes, sir. (R.-6). * * *"

In the case of Parson-Gibson Buick Corp. v. Fox, 152 Okla. 196, 4 P. (2d) 38, decided October 20, 1931, the court said:

"The claimant is competent to testify that he had the use of his eye and did not notice any defect of his vision in the same prior to the accident, and he may testify as to blood flowing from the injury to his eye, or that he suffered pain, or that he cannot see out of the eye since the injury or if he can see he may state the objects he is able to discern and how far away, and as to his symptoms. * * *"

Dr. A. A. Williamson, the attending physician, in his report of September 26, 1930, says: "Removed foreign body from right conea."

Dr. J. W. Shelton was called as a witness and testifies as follows:

"Q. What was the condition of his eye as to vision, doctor? A. I found his vision in the left eye to be 20/20ths. In his right eye, his vision was 20/100ths and I found he had a hazy vitreous, and that is about the only pathology I could find about his eye. Q. What per cent. disability would that be, doctor? A. 20/100, that would be, I think, about 51 per cent. loss of vision, loss of use. (Cross-examination): Q. Doctor, do you find any pathology to account for the loss of vision you found in the eye? A. Well, a hazy vitreous would account for the loss of vision. Q. Was that general over the eye? A. Yes, sir. The vitreous is the semi-liquid contents of the eyeball. Q. Doctor, the loss of vision you stated that

the claimant has,—is that, in your opinion, permanent? A. Well, I think it is (R. 9-10-11). (By the Court): Q. Would you anticipate any increase in his visual acuity? A. These cases, if they are of specific origin, they will clear up under treatment although they are,—but if they are of some other origin, it is questionable sometimes about the clearing up. (R.-12). Q. Would a foreign body, if it had been removed, set up a condition such as this? A. It would have to be a penetrating foreign body embedded in the back of the eye. Q. Doctor, from the history given you, what is the relation between this foreign body and the injury he had? A. Well, I could not say that the injury did not have to do with it. Nor can I arrive at the present time at the probable cause of it. These cases may be caused from focal infection of the tonsils or teeth, and not being able to locate just what the cause might be—Q. You do not mean to convey the impression that you think the condition this man has was caused by the injury? A. I could not say as it was or was not. I cannot connect it up with the injury, and as I said I am unable to find anything that would cause the condition at the present time. It is there for some cause."

Dr. L. M. Westfall testified as follows (R.-24):

"Q. What condition did you find on your first examination? What did that indicate, doctor? A. Oh, nothing special. Just a small amount of irritation of the conjunctive membrane. The right eye showed cornea clear; the iris normal; the vitreous showed very small dust like opacities. Three dot like opacities were seen. The vision of the right eye was 20/20. The vision of the left eye was 20/20. The vision at that time in both eyes was practically normal,—that is true? A. Yes. (By the Commission): Q. Would it be possible to determine from an examination on October 11th whether or not there had been any injury of sufficient degree to have produced a hemorrhage in September? A. Yes, for this reason. In the first place the cornea showed no scar. Therefore, the foreign body did not penetrate deeply. If he did have a corneal ulcer following it, it was not very deep, because it did not leave a scar and the X-ray showed there was not a foreign body."

Dr. R. O. Early testified as follows:

"Q. What did your examination reveal, doctor? A. Vision right eye 20/200ths. I was unable to find any scars on the cornea where a foreign body had been. No conjunction in the eye at the time of the examination; fundus negative. I am unable to find any pathology to explain the condition complained of. Q. That is, he only admitted a vision of 20/200ths. A. That is what I got. Q. And you found no pathology to explain the deficiency? A. No. Q. Were

you in any way about to connect up the loss of vision that you found, or the deficiency in vision with the injury of what he gave you a history of? A. I could not find any evidence of an injury to the cornea except the claimant's complaint."

Dr. Theodore G. Wails, having been duly sworn, testifies as follows (R.-32):

"A. I examined him on October 14, 1930, concerning an injury which he told me on September 22, 1930. * * * When first seen by me there was no scar found on the cornea. There was a slight flattened place on the cornea on the nasal side of the pupil, which I took had been treated. * * * The lens were clear, showing no foreign body had struck the lens. * * * There was a hazy material floating about in the vitreous which is the eye back of the lens. * * * No spots on the retina or any evidence of an injury to the back side of the eye. At the time I saw him I got 20/40ths and it is possible that in a few minutes he might see better or worse,—depending where the spot is in front of the pupil. There was two or three small retinal spots which were typical of disease present in the right. * * * Q. Do you have any opinion as to whether or not the condition that you found or the pathology you found in this man's eye had any relation to the injury of which he gave you a history of? Q. Well, it is inconceivable to me that this type of eye could be due to an injury. It was slight. Could be due to an injury of so slight a character as not to leave a scar. I can see a flattened plat in the other layers of the cornea at the place where he says he received the injury and these could be due to a very shallow ulcer or abrasion from a foreign body. (R.-33-34). Q. Dr. Wails, what does—Doctor, would this opacity increase rapidly or the hazy part of the vitreous be apt to increase rapidly? A. Yes, that might. I saw him again in November,—November 20th, and he had practically the same condition then. Q. He had the same condition then, you say? A. Yes, although his vision—he could not get 20/100ths.".

It will be remembered the petitioners contend the testimony is insufficient to sustain the award. The Industrial Commission found from the evidence that claimant did sustain an accidental injury to his right eye while in the employ of petitioners; that said accident occurred on September 22, 1930; that soon after the injury claimant was taken before Dr. A. A. Williamson for examination and treatment. Dr. A. A. Williamson, the attending physician, in his report says: "Removed foreign body from right cornea." We find no competent evidence to disprove that claimant sustained the injury complained of.

The evidence further shows that claim-

ant's vision was good prior to the date of the injury; that after the injury it was found that he had a loss of vision in the right eye from 16 to 80 per cent. The Commission found that the claimant had an 80 per cent. loss of vision caused by the injury. One of the physicians testified that the injury is permanent. Three of them testified that the loss of vision might have been caused by the injury.

We have very carefully read the pertinent testimony in the instant case and hold that the evidence is amply sufficient to sustain the finding and award of the Commission.

The Commission's findings of facts and award of compensation to the claimant is affirmed.

LESTER, C. J., CLARK, V. C. J., and SWINDALL, ANDREWS, and KORNEGAY, JJ., concur. McNEILL, HEFNER, and RILEY, JJ., absent.

Note.—See under (1) annotation in L. R. A. 1916A, 266; 58 A. L. R. 1382; 28 R. C. L. 828, 829; R. C. L. Perm. Supp. p. 6254; R. C. L. Pocket Part, title Workmen's Compensation, § 116. (2) annotation in 8 A. L. R. 1324; 24 A. L. R. 1466; 67 A. L. R. 802; 28 R. C. L. 820, 821; R. C. L. Perm. Supp. p. 6243; R. C. L. Pocket Part, title Workmen's Compensation, § 106.