

FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JUL 17 2014

CHIEF JUSTICE

This opinion was filed for record
at 8:00 a.m. on July 17, 2014

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| STATE OF WASHINGTON, | No. 88118-9 |
| Respondent, | |
| v. | En Banc |
| | JUL 17 2014 |
| ALVIN LESLIE WITHERSPOON, | Filed |
| Petitioner. | |

J.M. JOHNSON, J.*—Petitioner Alvin Witherspoon challenges his conviction and life sentence for second degree robbery.[1] Because the robbery conviction was his third "most serious offense," he was sentenced to life in prison

---

*Justice James M. Johnson is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

[1] The Court of Appeals erred by stating that the challenged conviction was for second degree robbery while armed with a deadly weapon. *See State v. Witherspoon*, 171 Wn. App. 271, 280, 286 P.3d 996 (2012). The trial court never made a finding that Witherspoon was armed with a deadly weapon. *See* Clerk's Papers at 5. The presentence investigation report also contains this error. *See* Reporter's Tr. on Appeal (Sentencing) at 2 (identifying this inaccuracy and noting that the trial court did not rely on it for sentencing purposes).

without the possibility of release under the Persistent Offender Accountability Act (POAA) of the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW; RCW 9.94A.570. We affirm the Court of Appeals, upholding Witherspoon's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

On November 12, 2009, Witherspoon and his fiancée drove to the victim's home. Witherspoon does not dispute that he then broke into the victim's home and stole several items. While the burglary was in progress, the victim returned home and noticed an unknown car parked in her driveway. The victim exited her car and saw Witherspoon walking from around the side of her home. He was holding his left hand behind his back. The victim testified at trial that she asked Witherspoon what he had behind his back, and he said he had a pistol. He then got in his car and drove away. The victim noticed some of her belongings in the back of his car, followed him in her own car, and called 911 as he fled the scene. Police arrested Witherspoon and his fiancée, obtained a search warrant, and found multiple items belonging to the victim in their home. From jail, Witherspoon called his fiancée, attempting to convince her to stop talking to the police and lie about the crime. The phone conversation was recorded by the jail.

A jury found Witherspoon guilty of first degree burglary and second degree robbery based on the events of November 12, 2009. *See* RCW 9A.52.025(1); RCW 9A.56.190, .210(1). The jury also found him guilty of witness tampering based on the jailhouse phone conversation he made to his fiancée after his arrest. *See* RCW 9A.72.120(1). At sentencing, the court determined that the certified conviction documents met the State's burden to prove two prior strike convictions. The court found that Witherspoon is a persistent offender and sentenced him to life in prison without the possibility of early release.

On appeal, he challenged his convictions and sentence on a number of grounds. The Court of Appeals affirmed his convictions and sentence. *State v. Witherspoon*, 171 Wn. App. 271, 286 P.3d 996 (2012). Witherspoon sought discretionary review in this court, which was granted on only four issues. *State v. Witherspoon*, 177 Wn.2d 1007, 300 P.3d 416 (2013).

ISSUES

1.    Whether there was sufficient evidence to support Witherspoon's second degree robbery conviction.

2.    Whether Witherspoon's counsel was ineffective in not asking for an instruction on first degree theft as a lesser included offense.

3.    Whether Witherspoon's persistent offender sentence constitutes cruel or cruel and unusual punishment.

3

4. Whether Witherspoon's previous strike offenses should have been proved to a jury beyond a reasonable doubt.

ANALYSIS

1. There Was Sufficient Evidence To Support Witherspoon's Second Degree Robbery Conviction

Witherspoon claims that insufficient evidence exists to prove all elements of second degree robbery, as instructed to the jury. "The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992) (citing *State v. Green*, 94 Wn.2d 216, 220-22, 616 P.2d 628 (1980)). Witherspoon must accordingly admit the truth of the State's evidence and all reasonable inferences that can be drawn from such evidence. *Id.* We must also defer to the fact finder on issues of witness credibility. *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010) (citing *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990)). In this case, a rational trier of fact could have found guilt beyond a reasonable doubt. Consequently, sufficient evidence exists to support the jury's verdict.

Pursuant to RCW 9A.56.190:

A person commits robbery when he or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use *or threatened use* of immediate force, violence, or fear of injury to that person or his or her property or the

4

person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial. Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear. [2]

(Emphasis added.) The jury instruction in this case included the statutory language above, but omitted the word "such" from the phrase "such force or fear must be used to obtain or retain possession of the property." It therefore read, in part, "That force or fear was used by the Defendant to obtain or retain possession of the property or to prevent or overcome resistance to the taking or to prevent knowledge of the taking." Clerk's Papers (CP) at 55 (Instruction 11).

Witherspoon asserts that under the law of the case doctrine, the jury instruction required the State to prove actual force or fear. This doctrine provides that a jury instruction not objected to becomes the law of the case. *State v. Willis*, 153 Wn.2d 366, 374, 103 P.3d 1213 (2005) (citing *State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998)). "In a criminal case, the State assumes the burden of proving otherwise unnecessary elements of the offense when such elements are included without objection in a jury instruction." *Id.* at 374-75 (citing *Hickman*, 135

---

[2]In 2011, the legislature amended this statute to be gender neutral. This amendment did not affect the substance of the statute.

Wn.2d at 102). Contrary to Witherspoon's assertion, the exclusion of the word "such" does not change the plain meaning of the instruction in a way that requires the State to prove actual force or fear.

Witherspoon claims that he made, at most, an implied threat that instilled no fear. He further claims that even if there had been force or fear, it did not help accomplish the robbery because the victim did not know that Witherspoon had taken any of her property until he drove away. He contends that her ignorance did not stem from force, fear, or threats. Because we determine intimidation based on an objective test, Witherspoon's argument does not stand.

"Robbery encompasses any 'taking of . . . property [that is] attended with such *circumstances of terror*, or such threatening by *menace, word or gesture* as in common experience is likely to create an apprehension of danger and induce a man to part with property for the safety of his person.'" *State v. Shcherenkov*, 146 Wn. App. 619, 624-25, 191 P.3d 99 (2008) (alterations in original) (quoting *State v. Redmond*, 122 Wash. 392, 393, 210 P. 772 (1922)). To determine whether the defendant used intimidation, we use an objective test. We consider whether an ordinary person in the victim's position could reasonably infer a threat of bodily harm from the defendant's acts. *Id.* at 625 (quoting 67 AM. JUR. 2D *Robbery* § 89, at 114 (2003)).

Taking the facts in the light most favorable to the State, a rational jury could have found that Witherspoon used force or the threatened use of force in this case. The victim testified at trial that she noticed an unknown car in her driveway when she arrived home. As she exited her car, she saw Witherspoon come around the side of her home with one hand behind his back. She testified that she asked him what he had behind his back, and he said he had a pistol. A rational jury could have found that this was an implied threat that he would use force if necessary to retain her property. The evidence is sufficient to prove the elements of second degree robbery beyond a reasonable doubt. We accordingly affirm the Court of Appeals, which upheld Witherspoon's robbery conviction.

2.     Witherspoon Does Not Prove That Counsel Was Ineffective in Not Asking for an Instruction on First Degree Theft as a Lesser Included Offense

Witherspoon argues ineffective assistance of counsel because his trial counsel did not request an instruction on theft as a lesser included offense. Counsel's performance, however, did not fall below an objective standard of reasonableness.

In order for a petitioner to prevail on an ineffective assistance claim, he must overcome the presumption that his counsel was effective. *State v. Thiefault*, 160 Wn.2d 409, 414, 158 P.3d 580 (2007). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668, 690,

104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To overcome this presumption, Witherspoon must demonstrate that "(1) 'counsel's representation fell below an objective standard of reasonableness' and (2) 'the deficient performance prejudiced the defense.'" *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 35, 296 P.3d 872 (2013) (quoting *Strickland*, 466 U.S. at 687-88). However, "if a personal restraint petitioner makes a successful ineffective assistance of counsel claim, he has necessarily met his burden to show actual and substantial prejudice." *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012). Accordingly, to prevail on his claim, Witherspoon must prove that trial counsel's "acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Under RCW 10.61.006, both the defendant and the State have the right to present a lesser included offense to the jury. *State v. Stevens*, 158 Wn.2d 304, 310, 143 P.3d 817 (2006). To prove the lesser included offense, the party requesting the instruction must meet a two-pronged test: (1) "under the legal prong, all of the elements of the lesser offense must be a necessary element of the charged offense" and (2) "under the factual prong, the evidence must support an inference that the lesser crime was committed." *Id.* (citing *State v. Gamble*, 154 Wn.2d 457, 462-63, 114 P.3d 646 (2005)).

In *State v. Grier*, 171 Wn.2d 17, 39, 246 P.3d 1260 (2011), we recognized that whether to request a jury instruction on lesser included offenses is a tactical decision. "Thus, assuming that defense counsel has consulted with the client in pursuing an all or nothing approach, a court should not second-guess that course of action, even where, by the court's analysis, the level of risk is excessive and a more conservative approach would be more prudent." *Id.* Here, the tactical decision was prudent, if unsuccessful.

Witherspoon's trial counsel chose to take an "all or nothing" approach that included not requesting a jury instruction on the lesser included offense of theft. Admittedly, conviction for the robbery charge was a close call. Witherspoon and his counsel chose to tactically defend on the possibility that the State could not prove to the jury that the property was taken by the use or threatened use of force or injury. *See* RCW 9A.56.190. They lost that bet, and the jury convicted Witherspoon of second degree robbery.

Witherspoon failed to meet his burden of proving ineffective assistance of counsel under *Strickland*. Accordingly, we affirm the Court of Appeals on this issue.

3. Witherspoon's Persistent Offender Sentence Does Not Constitute Cruel or Cruel and Unusual Punishment

In addition to challenging his robbery conviction, Witherspoon also challenges his POAA sentence. He claims that his life sentence violates the Eighth

Amendment to the United States Constitution and article I, section 14 of the Washington State Constitution. The Eighth Amendment bars cruel and unusual punishment while article I, section 14 bars cruel punishment. This court has held that the state constitutional provision is more protective than the Eighth Amendment in this context. *State v. Rivers*, 129 Wn.2d 697, 712, 921 P.2d 495 (1996) (citing *State v. Fain*, 94 Wn.2d 387, 392-93, 617 P.2d 720 (1980)). Consequently, if we hold that Witherspoon's life sentence does not violate the more protective state provision, we do not need to further analyze the sentence under the Eighth Amendment. *See id.*

*Fain* provides four factors to consider in analyzing whether punishment is prohibited as cruel under article I, section 14: "(1) the nature of the offense, (2) the legislative purpose behind the statute, (3) the punishment the defendant would have received in other jurisdictions, and (4) the punishment meted out for other offenses in the same jurisdiction." *Id.* at 713 (citing *Fain*, 94 Wn.2d at 397). In *Rivers*, we analyzed facts similar to the ones in this case under the *Fain* factors. In *Rivers*, a jury returned a verdict of guilty on the robbery charge. Rivers was sentenced to life in prison without the possibility of release because he was found to have committed three most serious offenses. He challenged his sentence on a number of grounds, including that it violated both the Eighth Amendment and article I, section 14. This

10

court applied the *Fain* factors, concluding that the POAA, as applied to Rivers, was not unconstitutional. *Id.* We reach the same conclusion in this case.

The first *Fain* factor is the nature of the offense. *Id.* As was noted in *Rivers*, robbery is a most serious offense. *Id.*; RCW 9.94A.030(32)(o). "The nature of the crime of robbery includes the threat of violence against another person." *Rivers*, 129 Wn.2d at 713. Here, the victim testified that the defendant told her he had a gun behind his back. This statement contains an implied threat.

The second *Fain* factor is the legislative purpose behind the statute. *Id.* In *Rivers*, we recognized that "the purposes of the persistent offender law include deterrence of criminals who commit three 'most serious offenses' and the segregation of those criminals from the rest of society." *Id.* (citing *State v. Thorne*, 129 Wn.2d 736, 775, 921 P.2d 514 (1996), *abrogated on other grounds by Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004)).

The third *Fain* factor is the punishment that the defendant would have received in other jurisdictions. *Id.* at 714. According to the concurrence/dissent, there are only four states outside of Washington in which a conviction of second degree robbery as a "third strike" offense triggers a mandatory sentence of life without parole. Concurrence/dissent at 18. Although these four states' treatment of similar crimes indicates that Washington is not alone in this area, the

concurrence/dissent is correct that this *Fain* factor weighs in favor of a finding of disproportionality. However, this factor alone is not dispositive.

The fourth *Fain* factor is the punishment meted out for other offenses in the same jurisdiction. *Rivers,* 129 Wn.2d at 714. In Washington, all adult offenders convicted of three "most serious offenses" are sentenced to life in prison without the possibility of release under the POAA. In *State v. Lee*, we held that a life sentence imposed on a defendant convicted of robbery and found to be a habitual criminal was not cruel and unusual punishment. *Id.* at 714 (citing *State v. Lee*, 87 Wn.2d 932, 558 P.2d 236 (1976)). In that case, this court held, "'Appellant's sentence does not constitute cruel and unusual punishment. The life sentence contained in RCW 9.92.090 is not cumulative punishment for prior crimes. The repetition of criminal conduct aggravates the guilt of the last conviction and justifies a heavier penalty for the crime.'" *Id.* at 714-15 (quoting *Lee*, 87 Wn.2d at 937). In Washington, "most serious offenses," including robbery, carry with them the sentence of life in prison without the possibility of release when the offender has a history of at least two other similarly serious offenses.

Considering the four *Fain* factors, Witherspoon's sentence of life in prison without the possibility of release does not violate article I, section 14 of the Washington State Constitution or the Eighth Amendment to the United States

Constitution. This court has repeatedly held that a life sentence after a conviction for robbery is neither cruel nor cruel and unusual. *See Rivers*, 129 Wn.2d at 715; *State v. Manussier*, 129 Wn.2d 652, 677, 921 P.2d 473 (1996) (a life sentence imposed for second degree robbery under POAA did not constitute cruel or cruel and unusual punishment where defendant's prior convictions were for first degree robbery); *Lee*, 87 Wn.2d at 937 (holding that a life sentence imposed for robbery under habitual criminal statute did not constitute cruel and unusual punishment where defendant's prior convictions were for robbery, two second degree burglaries, and second degree assault). Here, Witherspoon's earlier offenses were for first degree burglary and residential burglary with a firearm. The sentence of life in prison without the possibility of release for this third strike offense is proportionate to the crime.

As noted, because we hold that Witherspoon's life sentence does not violate the Washington Constitution's prohibition on cruel punishment, we do not need to further analyze Witherspoon's sentence under the Eighth Amendment. However, Witherspoon claims that recent United States Supreme Court precedent regarding the Eighth Amendment prohibits life sentences for offenders in his position. This argument is entirely without merit.

Witherspoon cites to *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), and *Miller v. Alabama*, __ U.S. __, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), for the proposition that a second degree robbery conviction cannot give rise to a mandatory sentence of life in prison without the possibility of release. He contends that the sentencing court must be able to reject such sentences when warranted by the pettiness of the offense or the characteristics of the offender. *Graham* and *Miller* are readily distinguishable and do not support such a claim.

In *Graham*, 132 S. Ct. at 2034, the United States Supreme Court held that the Eighth Amendment prohibits the imposition of life sentences without the possibility of release on juvenile offenders who did not commit homicide. Two years later in *Miller*, 132 S. Ct. at 2460, the Court held that mandatory sentencing of life without release for those under the age of 18 at the time of their crimes violates the Eighth Amendment. In *Miller*, the Court noted that *Roper v. Simmons*, 543 U.S. 551, 569, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), and *Graham* establish that children are constitutionally different from adults for sentencing purposes. *Miller*, 132 S. Ct. at 2464. This line of cases has relied on three argued differences between children and adults: (1) children lack maturity and have an underdeveloped sense of responsibility that can lead to impulsivity and risk taking; (2) children are vulnerable to negative influences and have little control over their environments; and

14

(3) children's characters are not well formed, meaning that their actions are less likely than adults to be evidence of depravity. *Id.*

*Graham* and *Miller* unmistakably rest on the differences between children and adults and the attendant propriety of sentencing children to life in prison without the possibility of release. Witherspoon was an adult when he committed all three of his strike offenses. These cases do not support Witherspoon's argument that all sentencing systems that mandate life in prison without the possibility of release for second degree robbery are per se invalid under the Eighth Amendment.

Under our established precedent, along with that of the United States Supreme Court, Witherspoon's sentence violates neither article I, section 14 of our state constitution nor the Eighth Amendment to the United States Constitution. We accordingly affirm the Court of Appeals, upholding Witherspoon's POAA sentence.

4.  The Law Does Not Require That Witherspoon's Previous Strike Offenses Be Proved to a Jury Beyond a Reasonable Doubt

Witherspoon claims that previous strike offenses must be proved to a jury beyond a reasonable doubt within the context of sentencing under the POAA. He argues that prior convictions are elements of a crime when they elevate a class B felony to a third strike offense. Witherspoon concedes that *Blakely* contains an

exception for prior convictions[3] but contends that the United States Supreme Court's recent decision in *Alleyne v. United States*, __ U.S. __, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), eliminates justification for this exception. This argument fails.

In *Apprendi v. New Jersey* the United States Supreme Court held that "[O]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) (emphasis added). Several years later in *Blakely*, 542 U.S. at 313-14, the United States Supreme Court held that sentencing above the statutory maximum of the standard range based on the sentencing judge's finding of deliberate cruelty violated a defendant's right to trial by jury under the Sixth Amendment to the United States Constitution. However, the Court specifically noted, "By reversing the judgment below, we are not . . . 'find[ing] determinate sentencing schemes unconstitutional.' This case is not about whether determinate sentencing is constitutional, only about how it can be implemented in a way that respects the Sixth Amendment." *Id.* at 308 (second alteration in original) (citation omitted). Nowhere

---

[3]*State v. Magers*, 164 Wn.2d 174, 193, 189 P.3d 126 (2008) ("[T]he Court of Appeals has held that *Blakely* does not apply to sentencing under the POAA, *Blakely* being specifically directed at exceptional sentences. *State v. Ball*, 127 Wn. App. 956, 957, 959-60, 113 P.3d 520 (2005). We agree with this conclusion.").

in *Blakely* did the Court question *Apprendi*'s exception for prior convictions or the propriety of determinate sentencing schemes.

Earlier this year, the United States Supreme Court again considered which facts must be proved to a jury under the Sixth Amendment if such facts may increase a criminal sentence. *Alleyne*, 133 S. Ct. 2151. The Court held that any fact that increases a mandatory minimum sentence for a crime is an element of the crime that must be submitted to the jury. *Id.* at 2155. Witherspoon argues that under *Alleyne*'s reasoning, prior convictions must be proved to a jury beyond a reasonable doubt before they can be used to enhance a sentence. This is, however, incorrect. Like *Blakely*, nowhere in *Alleyne* did the Court question *Apprendi*'s exception for prior convictions. It is improper for us to read this exception out of Sixth Amendment doctrine unless and until the United States Supreme Court says otherwise. Accordingly, Witherspoon's argument that recent United States Supreme Court precedent dictates that his prior convictions must be proved to a jury beyond a reasonable doubt is unsupported.

We have long held that for the purposes of the POAA, a judge may find the fact of a prior conviction by a preponderance of the evidence. In *Manussier*, 129 Wn.2d at 681-84, we held that because other portions of the SRA utilize a preponderance standard, the appropriate standard for the POAA is by a

preponderance of the evidence. We also held that the POAA does not violate state or federal due process by not requiring that the existence of prior strike offenses be decided by a jury. *Id.* at 682-83. This court has consistently followed this holding. We have repeatedly held that the right to jury determinations does not extend to the fact of prior convictions for sentencing purposes. *See State v. McKague*, 172 Wn.2d 802, 803 n.1, 262 P.3d 1225 (2011) (collecting cases); *see also In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 256, 111 P.3d 837 (2005) ("In applying *Apprendi*, we have held that the existence of a prior conviction need not be presented to a jury and proved beyond a reasonable doubt."); *State v. Smith*, 150 Wn.2d 135, 139, 75 P.3d 934 (2003) (prior convictions do not need to be proved to a jury beyond a reasonable doubt for the purposes of sentencing under the POAA).

"The doctrine [of stare decisis] requires a clear showing that an established rule is incorrect and harmful before it is abandoned." *In re Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970). Witherspoon has not made such a showing. Accordingly, it is settled law in this state that the procedures of the POAA do not violate federal or state due process. Neither the federal nor state constitution requires that previous strike offenses be proved to a jury. Furthermore, the proper standard of proof for prior convictions is by a preponderance of the evidence.

The State bears the burden of proving by a preponderance of the evidence the existence of prior convictions as predicate strike offenses for the purposes of the POAA. *State v. Knippling*, 166 Wn.2d 93, 100, 206 P.3d 332 (2009) (quoting *In re Pers. Restraint of Cadwallader*, 155 Wn.2d 867, 876, 123 P.3d 456 (2005)). In *State v. Hunley*, 175 Wn.2d 901, 915, 287 P.3d 584 (2012), this court held that "constitutional due process requires at least some evidence of the alleged convictions." Furthermore, "'[t]he best evidence of a prior conviction is a certified copy of the judgment.'" *Id.* at 910 (quoting *State v. Ford*, 137 Wn.2d 472, 480, 973 P.2d 452 (1999)).

Here, the trial court possessed certified copies of three judgments and sentences from Snohomish County. Exs. 2-4. Exhibit 3 showed the defendant had committed a residential burglary with a firearm, which is a most serious offense pursuant to RCW 9.94A.030(32)(t). Exhibit 4 demonstrated that the defendant had committed a first degree burglary, which is a most serious offense pursuant to RCW 9.94A.030(32)(a). The court noted at sentencing, "I believe that it is the same person in light of the presentence investigation as well as the certified copy that's entered." Reporter's Tr. on Appeal (Sentencing) at 35. Accordingly, the State met its burden of proving two previous strike offenses by a preponderance of the evidence.

United States Supreme Court precedent, as well as this court's own precedent, dictate that under the POAA, the State must prove previous convictions by a preponderance of the evidence and the defendant is not entitled to a jury determination on this issue. Here, based on certified copies of two judgments and sentences, the trial court determined that Witherspoon is a persistent offender and must be sentenced to life in prison without the possibility of release. We affirm the Court of Appeals, upholding Witherspoon's POAA sentence.

CONCLUSION

We affirm the Court of Appeals on all four issues accepted for review. First, there was sufficient evidence to support Witherspoon's second degree robbery conviction. Second, Witherspoon failed to meet his burden of proving ineffective assistance of counsel on the grounds that he and his counsel tactically determined not to request a jury instruction on first degree theft as a lesser included offense, hoping for a not guilty verdict if the State failed to prove all elements of the greater offense. Third, Witherspoon's life sentence without the possibility of release does not constitute cruel or cruel and unusual punishment. Finally, the law does not require that Witherspoon's previous strike offenses be proved to a jury beyond a reasonable doubt. We accordingly affirm the Court of Appeals, upholding the robbery conviction and the POAA life sentence without the possibility of release.

WE CONCUR:

NO. 88118-9

GORDON McCLOUD, J. (concurring and dissenting)—I agree that Alvin Witherspoon's conviction must be affirmed. There was certainly sufficient evidence to support his conviction of second degree robbery, despite the bravery of the victim in this case. The robbery statute focuses on the defendant's "use or threatened use" of force, fear, etc., not on the courage of the victim in response. RCW 9A.56.190.

In addition, following *State v. Grier*, 171 Wn.2d 17, 246 P.3d 1260 (2011), the ineffective assistance of counsel claim fails on this direct appeal: if Mr. Witherspoon seeks to prove that his lawyer's failure to ask for a lesser included offense instruction was something other than tactical, he must submit some evidence to prove it.

I respectfully disagree, however, with the majority's decision to affirm the sentence. The trial judge in this case—an experienced jurist—stated that life without parole was disproportionately harsh for Witherspoon's offense and that if he had any discretion to impose a lower sentence, he would have done so. The controlling Washington case interpreting the applicable

1

provision of the Washington State Constitution is *State v. Fain*, 94 Wn.2d 387, 617 P.2d 720 (1980). *Fain* requires us to do just such a disproportionality analysis now, in reviewing the sentence.

We should therefore subject Witherspoon's sentence to the four-factor disproportionality analysis this court adopted in *Fain*. Under that analysis, I conclude that Witherspoon's sentence—a mandatory term of life imprisonment without the possibility of parole for the third "strike" offense of second degree robbery—violates article I, section 14 of our state constitution. I therefore respectfully dissent from the majority's holding on that issue.

I. The Experienced Trial Judge Stated That He Would Not Have Imposed a Sentence of Life without the Possibility of Parole If He Was Not Required To Do So

Witherspoon received his "third strike" life sentence for a second degree robbery that is best described as inept. His victim attested to this at the sentencing hearing, where she exhorted him to pursue an interest to which he was better suited:

> I just would like to address Alvin . . . because I really had a lot of sleepless nights over this and felt that . . . I wanted a fair and just sentence or whatever for him. And [I] felt really bad for him and talked to a lot of people about this and nobody seemed to really have any compassion for him whatsoever. I think I had more compassion for him than anybody. And then I learned that

he just does this over and over and over again and he doesn't know anything else and I feel for his mom and his girlfriend and they stand behind him and he just keeps doing this over and over and he is a really lousy thief and he needs to know that he has other potential and that he could learn something else and he might not be so lucky next time, because I'm damned if I'm going to be the one dead. . . . I hope you, Alvin, get some -- there's a lot of opportunities in jail and that you should take every one of them, and find what you're good at, and it's not being a thief so find something else and something that you like is -- probably something you're interested [in] is probably something that you're good at and I doubt if it's being a thief because you're [not] getting much out of it.

Reporter's Transcript on Appeal (TR) (Sentencing) at 37-38.

I quote Ms. Pittario's statement at length not only because it captures the bumbling nature of Witherspoon's crime but also because it expresses her sincere belief that Mr. Witherspoon, who was 36 at the time, might reform.

The trial judge who sentenced Witherspoon, the late Judge Craddock Verser, clearly shared this belief. His statement at sentencing, which I will also quote at length, leaves no doubt that were it not for the constraints imposed on him by the Persistent Offender Accountability Act (POAA) of the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, he would not have sentenced Witherspoon to a life term:

When I first started in this profession years ago in 1980, there was a prison and parole system and judges had discretion to send people to jail, prison, parole, a number of different discretionary possibilities at every sentencing and you could take

3

something like this crime and look at it and go, okay, serious crime, it obviously affected Ms. Pittario. Nevertheless, is this the type of crime that you want to put somebody in prison for the rest of their life for. And, um, exercising discretion I wouldn't do that.

I -- over the last week, I -- I've never done a persistent offender sentencing, we just don't have that many in Jefferson County. Over the last week I looked at the statute and I was looking at the case law of what kind of discretion if any I had. I don't. I don't have any discretion. I don't take any pleasure, Mr. Witherspoon, in sentencing you as a persistent offender. That's a choice that was made in the filing decision and the decision that went to trial. . . .

The arguments that I should arrest judgment are -- quite frankly they were appealing to me. I said this young man is [36] years old . . . .

*. . . I didn't think you should go to prison the rest of your life and I don't mind putting that on the record but I have no discretion at all.*

*Id.* at 41-43 (emphasis added). This is an accurate statement of the law. Under Washington's persistent offender statute, the trial court had no discretion to sentence Witherspoon to anything other than life imprisonment with no possibility of parole. RCW 9.94A.570 ("[n]otwithstanding the statutory maximum sentence or any other provision of this chapter, a persistent offender shall be sentenced to a term of total confinement for life without the possibility of release").

II.     For Purposes of Article I, Section 14, of the Washington State Constitution, Life without Parole Is a Harsher Penalty than Life with the Possibility of Parole; the *Rivers* Holding Ignores This Distinction and Is No Longer Good Law

The majority rejects Witherspoon's article I, section 14 challenge solely on the basis of this court's decisions in *In re Personal Restraint of Grisby*, 121 Wn.2d 419, 527, 858 P.2d 901 (1993), and *State v. Rivers*, 129 Wn.2d 697, 921 P.2d 495 (1996). In so doing, the majority errs.

To the extent that *Grisby* applies at all to SRA convictions,[1] it is strictly limited to the Sixth Amendment context. *Grisby*, 121 Wn.2d at 430 ("The case before us is not an Eighth Amendment case [but] rather[] a Sixth Amendment case relating to a defendant's right to a jury trial."); U.S. CONST. amends. VI, VIII. The petitioner in *Grisby* argued that the statute under which he had been sentenced to life without the possibility of parole violated the Sixth Amendment because it penalized him for invoking his right to a jury trial. *Id.* at 421. That statute imposed a maximum penalty of life without parole on a defendant convicted of aggravated murder following a jury trial, but a maximum of life with parole for a defendant who pleaded guilty. *Id.* This court rejected Grisby's Sixth Amendment argument on the basis that

---

[1] I note that *State v. Thomas* explicitly distinguishes *Grisby* as a "pre-Sentencing Reform Act . . . case." 150 Wn.2d 821, 848, 83 P.3d 970 (2004).

5

because parole is granted "'strictly by grace through the Board of Prison Terms and Paroles,'" a defendant sentenced to life with the possibility of parole cannot actually expect to serve less than a life sentence. *Id.* at 426-27 (quoting *State v. Frampton*, 95 Wn.2d 469, 529, 627 P.2d 922 (1981) (Dimmick, J., concurring in part, dissenting in part)). That conclusion did not lead the *Grisby* court to hold that there is never a significant distinction between life with and without the possibility of parole. Rather, it led to the much narrower holding that the distinction was not significant enough to trigger the prohibition (under *United States v. Jackson*, 390 U.S. 570, 583, 88 S. Ct. 1209, 20 L. Ed. 2d 138 (1968)) against "'needless encouragement of guilty pleas.'" *Grisby*, 121 Wn.2d at 427 (quoting *Frampton*, 95 Wn.2d at 530 (Dimmick, J., concurring in part, dissenting in part)).[2]

Despite the narrowness of that holding and its limitation to the Sixth Amendment context, the *Rivers* majority relied on *Grisby* to conclude that life

---

[2] Notably, the Ninth Circuit granted Mr. Grisby's petition for writ of habeas corpus challenging that sentencing decision and compelled the State to resentence him, precisely because it rejected our decision that there is no constitutional distinction between life with and without parole. *Grisby v. Blodgett*, 130 F.3d 365, 369-70 (9th Cir. 1997) (noting that federal precedent "establishes that, as a matter of law, a sentence of life without the possibility of parole is significantly different from a sentence of life with the possibility of parole" for purposes of the *Jackson* decision).

with and without the possibility of parole are indistinguishable for purposes of an article I, section 14 challenge.[3] The court reached that conclusion without analyzing *Grisby*'s relevance to article I, section 14 and *Fain*.

This court has never expressly overruled *Rivers*' holding on the distinction between life with and without the possibility of parole. But it did so impliedly in *State v. Thomas*, 150 Wn.2d 821, 83 P.3d 970 (2004). *Thomas* held that there is a significant difference between life with and without the possibility of parole for purposes of the *Apprendi* rule.[4] 150 Wn.2d at 847-48. After *Thomas*, a defendant convicted of murder under Washington's SRA cannot be sentenced to life without parole unless aggravating factors are found by a jury, because a "sentence of life without parole is an *increased sentence*

---

[3] *Rivers*, 129 Wn.2d at 714 ("This court has held that the distinction between life sentences with and without parole is not significant." (citing *Grisby*, 121 Wn.2d at 427)). In *Fain*, the *State* urged this court to proceed as if Jimmy Fain had not actually received a life sentence, since "the availability of parole and 'good behavior' credits" created "a likelihood" that Fain would actually serve far less than a lifetime behind bars. *Fain*, 94 Wn.2d at 393 (citing RCW 9.95.110, .070). We declined this invitation on the ground that a prisoner "has no right to parole, which is merely a privilege granted by [an] administrative body." *Id.* at 394 (citing *January v. Porter*, 75 Wn.2d 768, 774, 453 P.2d 876 (1969)).

[4] Under the *Apprendi* rule, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

7

as compared to life with the possibility of parole in capital cases." *Id.* at 848

(emphasis added).[5]

As the majority notes, the *Thomas* court purported to distinguish *Rivers*

on the basis that it did not involve an "*Apprendi* problem." *Id.* But for

purposes of the question presented in this case, that is a distinction without a

difference. Neither logic nor precedent supports the theory that an "increase"

under *Thomas*/*Apprendi* is meaningless for purposes of an article I, section

14/*Fain* analysis. In spite of its dicta to the contrary, the *Thomas* decision

cannot be confined to the Sixth Amendment context. It is directly relevant to

the question presented in this case.

---

[5] The majority asserts that *Thomas* is limited to capital sentencing cases. Majority at 13 n.2. It is true that the *Thomas* court cited the "statutory scheme" at issue in that case—according to which "a defendant charged with murder is not eligible for *either* life without parole or the death penalty unless aggravators are found beyond a reasonable doubt"—as support for its conclusion that the legislature intended life with and without parole to be "wholly different" sentences in the context of a capital case. *Thomas*, 150 Wn.2d at 848. But it would be absurd to reach a contrary conclusion in the context of the three strikes statute simply because that statute makes no provision *whatsoever* for the more lenient sentence. Like the capital sentencing statute at issue in *Thomas*, the POAA imposes life without parole as punishment for the "aggravat[ed] . . . guilt" associated with particular criminal conduct. *Rivers*, 129 Wn.2d at 714-15 ("'The repetition of criminal conduct aggravates the guilt of the last conviction and justifies a heavier penalty for the crime.'" (quoting *State v. Lee*, 87 Wn.2d 932, 937, 558 P.2d 236 (1976))). Under the POAA, as under the capital sentencing statutes at issue in *Thomas*, a "sentence of life without parole is an increased sentence as compared to life with the possibility of parole." *Thomas*, 150 Wn.2d at 848.

I would therefore not resolve Witherspoon's article I, section 14 argument by resurrecting *Rivers'* reliance on *Grisby*. To the extent *Rivers* held that there is no distinction between a sentence of life with and without parole, it is no longer good law. As this court acknowledged in *Thomas*, life without parole is a unique sentence, harsher and more punitive than life with the possibility of parole.[6]

---

[6] While the *Thomas* decision alone precludes the majority's reliance on *Grisby* and *Rivers* to reject Witherspoon's article I, section 14 challenge, it should be noted that that reliance is also inconsistent with United States Supreme Court precedent. In *Graham v. Florida*, the Court concluded that for purposes of the Eighth Amendment's ban on cruel and unusual punishments, the sentence of life without parole has severe and punitive characteristics distinguishing it from a sentence of life with the possibility of parole. 560 U.S. 48, 69, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010) ("The State does not execute the offender sentenced to life without parole, but the sentence alters the offender's life by a forfeiture that is irrevocable."). The *Graham* holding rested on those characteristics—not, as the majority would have it, on "the differences between children and adults," majority at 16—and on prior Eighth Amendment cases in which "the severity of sentences that deny convicts the possibility of parole" played an integral part in the Court's decision. 560 U.S. at 59-60 (citing *Rummel v. Estelle*, 445 U.S. 263, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980) and *Solem v. Helm*, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983)). In short, *Graham* unambiguously holds that the sentence of life without parole is *more severe*, for purposes of the Eighth Amendment, than the sentence of life with the possibility of parole.

As the majority acknowledges, article I, section 14 of the Washington Constitution is more protective of individual rights than the Eighth Amendment. Majority at 10 (citing *Fain*, 94 Wn.2d at 392). It follows that article I, section 14 must recognize the unique severity of life without parole. It cannot be that our more protective constitutional provision would fail to account for "harshness" that is dispositive in Eighth Amendment cases. *Graham*, 560 U.S. at 70.

Just as life without parole is harsher than life with parole, for purposes of article I, section 14, *mandatory* life without parole is harsher than *discretionary* life without parole. This is true as a factual matter: the trial judge in this case explicitly stated that he would not impose a life without parole sentence if it were not mandatory. It is also true as a legal matter; in *Fain*, we noted that "Washington [was then] one of only three states which still retains a habitual criminal statute imposing a *mandatory* life sentence after any three felonies." *Fain*, 94 Wn.2d at 399 (emphasis added) (citing *Rummel v. Estelle*, 445 U.S. 263, 279, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980); *id.* at 296 (Powell, J., dissenting)); *see also Harmelin v. Michigan*, 501 U.S. 957, 996, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) (acknowledging that the petitioner's sentence—life without the possibility of parole—was "unique in that it is the second most severe known to the law," more severe than discretionary life without parole).[7]

---

[7] In *Harmelin*, the majority rejected the argument that the Eighth Amendment requires a sentencing court to exercise discretion (to consider mitigating or aggravating circumstances) before imposing a sentence of life without parole. 501 U.S. at 994-95; *id.* at 1004 (Kennedy, J., concurring). The Court rejected that argument, however, because it declined to apply a proportionality analysis to the petitioner's sentence. *Harmelin*, 501 U.S. at 994-95. In *Fain*, this court adopted the proportionality analysis endorsed by the dissenters in *Harmelin*. For purposes of that analysis, a mandatory sentence is more severe than a sentence that permits the trial court to consider the individual circumstances of a defendant's offense.

As a mandatory sentence of life without the possibility of parole, Witherspoon's sentence is almost as unusual as the sentence imposed in *Fain*. Of the 47 jurisdictions that have habitual offender statutes, only 5 (including Washington) would impose a mandatory sentence of life without parole for a third strike conviction of second degree robbery. *See infra* Part III.3.

III.     A Mandatory Sentence of Life without Parole Is Disproportionate to the Offense of Second Degree Robbery Committed as a "Third Strike"; Witherspoon's Sentence Thus Violates Article I, Section 14 of the Washington State Constitution

The proportionality analysis this court adopted in *Fain* requires us to consider four factors in an article I, section 14 challenge: (1) the legislative purpose behind the challenged statute, (2) the nature of the defendant's offense, (3) the punishment the defendant would have received in other jurisdictions for the same offense, and (4) the punishment the defendant would have received in Washington for other offenses. *Fain*, 94 Wn.2d at 397 (citing *Hart v. Coiner*, 483 F.2d 136, 140-43 (4th Cir. 1973)). In light of these factors, a sentence of mandatory life without the possibility of parole violates article I, section 14 protections when imposed for a second degree robbery offense.

1.     *Legislative purpose behind the POAA*

11

The POAA was enacted pursuant to popular initiative in 1993. LAWS OF 1994, ch. 1, § 2. Its statement of findings and intent identified four purposes served by the new law:

> (2) By sentencing three-time, most serious offenders to prison for life without the possibility of parole, the people intend to:
> (a) Improve public safety by placing *the most dangerous* criminals in prison.
> (b) Reduce the number of serious, repeat offenders by tougher sentencing.
> (c) Set proper and simplified sentencing practices that both the victims and persistent offenders can understand.
> (d) Restore public trust in our criminal justice system by directly involving the people in the process.

*Id.* § 1 (emphasis added).

Washington's POAA was the nation's first "three strikes" law; it was passed in the wake of several high profile and horrific crimes committed by repeat offenders.[8] Proponents of the POAA were motivated by the belief that harsh sentencing laws would effectively deter and incapacitate the "relatively small component of the offender population" who posed the greatest danger to public safety.[9]

---

[8] Jennifer Cox Shapiro, Comment, *Life in Prison for Stealing $48?: Rethinking Second-Degree Robbery as a Strike Offense in Washington State*, 34 SEATTLE U. L. REV. 935, 939-44 (2011).

[9] *Id.* at 940 (quoting Edwin Meese III, *Three-Strikes Laws Punish and Protect*, 7 FED. SENT'G REP. 58, 58 (1994).

As we acknowledged in *State v. Lee*, habitual offender statutes in general, including the one that predated the POAA in Washington, serve punitive as well as preventative purposes: "[t]he repetition of criminal conduct aggravates the guilt of the last conviction and justifies a heavier penalty for the crime." 87 Wn.2d 932, 937, 558 P.2d 236 (1976) (citing *State v. Miles*, 34 Wn.2d 55, 61-62, 207 P.2d 1209 (1949)); *accord State v. Manussier*, 129 Wn.2d 652, 677 n.108, 921 P.2d 473 (1996) (citing *Lee*, 87 Wn.2d at 937). But the POAA differs from the prior habitual offender statute in its imposition of mandatory life sentences without parole. LAWS OF 1994, ch. 1, § 2(4).[10] The legislative history indicates that the primary impetus for this change was the desire to protect the public by incapacitating the most dangerous offenders.

This factor would weigh in favor of upholding Witherspoon's sentence if he were in "the relatively small component of the offender population," who are the most incorrigible, that is, the worst of the worst. But neither the victim nor the trial judge believed that he fell into that category.

---

[10] *See also id.* at 939 & n.38 (describing the habitual offender statute that predated the POAA in Washington); LAWS OF 1992, ch. 145, § 8 (describing ways in which defendants sentenced to total confinement under the 1992 sentencing reform act can earn early release credits).

Thus, I cannot conclude that this factor weighs in favor of a finding of proportionality.

### 2.    *Nature of Witherspoon's offense*

Witherspoon's two prior "strike" convictions were for first degree burglary and residential burglary with a firearm; his third strike conviction was for second degree robbery. These are serious offenses—certainly more serious than the "wholly nonviolent crimes involving small amounts of property" at issue in *Fain*. 94 Wn.2d at 402.

But Witherspoon's final offense stands in stark contrast to those triggering the harshest penalties under Washington's SRA. *See infra* Part III.4. As noted by the majority, Witherspoon's victim did not realize that Witherspoon had retained any of her property until *after* Witherspoon was already driving away from her house. Majority at 6. Because of that fact, the dissenting judge in the Court of Appeals below concluded that Witherspoon had used stealth to accomplish the taking but had not employed the "force or fear" necessary to a robbery conviction under RCW 9A.56.190. *See State v. Witherspoon*, 171 Wn. App. 271, 320, 286 P.3d 996 (2012) (Armstrong, J., dissenting). Indeed, the dissent concluded that it was "logically impossible" to find that Witherspoon used "force or fear" to prevent his victim from

14

recovering her possessions, since Witherspoon was already leaving when the victim noticed that her possessions were in Witherspoon's car and since she was not in fact prevented from giving chase. *Id.* at 321 ("It is logically impossible to find that Pittario had the will to retain or recover property, which she did not know had been stolen. And the State offered no evidence that Witherspoon made any threat that Pittario should not follow them. Pittario testified that she was not afraid and, in fact, she gave chase.").

I agree with the majority that the State need not prove the victim's *actual*, subjective fear in order to sustain a robbery conviction, and I therefore disagree with the conclusion of the dissent below. But the fact that the State need *not* prove actual fear to sustain a robbery conviction shows how broadly the robbery statute sweeps. In Washington, as in many other states, a person can commit the crime of second degree robbery by means of brutal assault or—as in Witherspoon's case—by an "implied threat" that the victim seems to have regarded as more confusing than frightening. Majority at 7; TR (Trial Day 1) at 42-49 (Pittario testimony).[11] Thus, the nature of a second degree

---

[11] Ms. Pittario testified that she was not frightened by Mr. Witherspoon's statement that he had a pistol concealed behind his back, that she in fact believed that *he* was scared during their brief encounter, and that Mr. Witherspoon never threatened her. TR (Trial Day 1) at 42 ("Q. So you must not have been concerned that [Mr. Witherspoon] had a pistol? A. No."), 44 ("Q. Now, in fact, the man you

15

robbery offense may vary significantly from case to case.

Outside the POAA context, a court can consider the facts underlying a robbery conviction when imposing a sentence. It may impose a sentence anywhere within the standard sentence range; it may also depart from the standard range if mitigating circumstances are established. RCW 9.94A.535(1). This discretion is a crucial means of avoiding sentences that are "clearly excessive in light of the [SRA's] purpose[s]," *id.* § (1)(g), which include ensuring that punishments are both "just" and "proportionate to the seriousness of the offense," RCW 9.94A.010(2), (1).

Under the POAA, a court lacks that discretion. In this case, the result is severe: a defendant who neither injured nor frightened his victim received a sentence generally reserved for society's most violent and predatory offenders. Thus, I cannot conclude that the nature of the offense factor weighs in favor of upholding this sentence under *Fain*'s second factor.

In fact, lack of discretion to depart from a habitual offender sentence is frequently cited by critics of habitual offender statutes.[12] It has prompted

---

saw, you thought he was scared didn't you? A. Yes."), 46 ("Q. But he never threatened you in any way? A. No."), 48 ("Q. You didn't fear any injury to yourself, your person? A. No.").

[12] *See* Robert G. Lawson, *PFO Law Reform, A Crucial Step Toward*

courts in several jurisdictions to adopt sentencing procedures specifically
designed to prevent the mandatory imposition of excessive punishments under
recidivist statutes.[13] Indeed, courts have done so in two of the three states
with habitual offender statutes equivalent to Washington's.[14]

---

*Sentencing Sanity in Kentucky*, 97 KY. L.J. 1, 22 (2008-2009) (describing "typical"
defendants in persistent felony offender case study as those who "suffered
punishments grossly disproportionate to the seriousness of their crimes"); Michael
Vitiello, *Three Strikes: Can We Return to Rationality?*, 87 J. CRIM. L. &
CRIMINOLOGY 395, 396 & n.8 (1997) (collecting cases of "grossly disproportionate
prison terms" imposed for "minor third strikes"); Erik G. Luna, *Foreward: Three
Strikes in a Nutshell*, 20 T. JEFFERSON L. REV. 1, 24 & n.177 (1998) (noting that
"some judges have simply refused to apply [a three strikes] law when it would lead
to a disproportionate and unfair sentence").

[13] *State v. Dorthey*, 623 So. 2d 1276, 1280-81 (La. 1993) (adopting rule for
applying the state's habitual offender statute whereby sentencing court must reduce
the statutorily mandated minimum if it finds that that minimum "'makes no
measurable contribution to acceptable goals of punishment' [or] amount[s] to
nothing more than 'the purposeful imposition of pain and suffering' and 'is grossly
out of proportion to the severity of the crime'" (quoting *State v. Scott*, 593 So. 2d
704, 710 (La. App. 1991); LA. REV. STAT. 15:529.1)); *State v. Barker*, 186 W. Va.
73, 74-75, 410 S.E.2d 712 (1991) (explaining "procedure for analyzing a life
recidivist sentence under [West Virginia's] proportionality principle" and holding
that life sentence for third strike offense of "forgery and uttering" violated state
constitutional protection against cruel and unusual punishments); *Ashley v. State*,
538 So. 2d 1181, 1184-85 (Miss. 1989) (trial court must perform proportionality
analysis when imposing life without parole for third strike attempted robbery
conviction; life without parole is unconstitutional as applied to defendant who stole
three or four cans of sardines); *People v. Anaya*, 894 P.2d 28, 32 (Colo. App. 1994)
(noting that defendant is automatically entitled to proportionality review when
sentenced under the State's habitual offender statute (citing *People v. Mershon*, 874
P.2d 1025 (Colo. 1994))).

[14] *Dorthey*, 623 So. 2d at 1280-81; *Ashley*, 538 So. 2d at 1185.

As noted above, Washington's POAA was enacted mainly in response to public safety concerns: it was designed to ensure that dangerous, violent offenders would be permanently segregated from society. Applied mechanically, the statute can exceed this purpose.

> 3.     *Punishment in other jurisdictions for second degree robbery as a "third strike" offense*

As noted above, Witherspoon's sentence is almost as rare as the sentence this court overturned in *Fain*. Outside of Washington, there are only three states in which a conviction of second degree robbery as a "third strike" offense triggers a mandatory sentence of life without parole.[15] In the vast

---

[15] These are Louisiana, Massachusetts, and Mississippi. *See* App. There was certainly some decision making involved in my choice of sister-state robbery statutes to use in the appendix. I chose sister-state statutes with elements most nearly identical to the crime of which Mr. Witherspoon was convicted. That crime was second degree robbery in violation of RCW 9A.56.200 and .190, with no aggravating factor alleged (other than the "free crimes" factor, *see* RCW 9.94A.535(2)(c)), which does not relate to the manner in which the robbery was committed).

I believe this is the required comparison for three reasons. First, it comports with Washington's case law on "comparability" under the SRA, which limits the comparability analysis to facts/elements actually admitted to or proved beyond a reasonable doubt. *State v. Thiefault*, 160 Wn.2d 409, 414-15, 158 P.3d 580 (2007); *In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 258, 111 P.3d 837 (2005). Second, it is consistent with the comparison undertaken in *Fain*, 94 Wn.2d at 399-400: a statute-to-statute, elements-based comparison. Third, as discussed in *State v. Olsen*, No. 89134-6 (Wash. May 15, 2014), the problems inherent in comparing factual allegations, rather than proven factual elements, are virtually insurmountable when evaluating other states' crimes.

majority of jurisdictions with habitual offender statutes—34 out of 48—such

a conviction would result in a mandatory minimum sentence of 10 years or

less.[16] Six states impose a mandatory minimum of 25 years or less for a third

strike offense comparable to Witherspoon's.[17]

This *Fain* factor clearly weighs in favor of a finding of

disproportionality.

---

Nevertheless, if I had compared certain uncharged facts underlying the State's *theory* of how Witherspoon committed his third "strike" offense—the theory that this was a robbery based on a verbal threat involving a nonexistent gun—the results under the third *Fain* factor would be similar. That comparison would add only three states to the list of jurisdictions that punish unarmed robbery as a third strike with mandatory life without parole. (These are Delaware, New Jersey, and Wisconsin. DEL. CODE ANN. tit. 11, § 832(a)(2), § 4214(b); N.J. STAT. ANN. § 2C:15-1(1)(b), § 2C:43-7.1.(b)(2); WIS. STAT. § 939.62(2m)(a)(2m), § 943.32(2).)

[16] There are 31 jurisdictions in which a third strike conviction for second degree robbery triggers an enhanced mandatory minimum sentence of 10 years or less. *See* App. These are Alabama, Alaska, Arizona, Arkansas, Connecticut, Washington, DC, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kentucky, Maine, Michigan, Minnesota, Missouri, Nebraska, New Mexico, New York, North Carolina, North Dakota, Ohio, Rhode Island, South Dakota, Tennessee, Texas, Utah, Wisconsin, Wyoming, and Montana. *Id.* Montana imposes a mandatory life sentence on recidivist offenders in most cases, but not where (as in Witherspoon's case) injury or threat of injury is an element of the third-strike offense but no injury to the victim actually occurs. *Id.* In those cases, the sentence is discretionary. *Id.* In four other states (Delaware, Pennsylvania, South Carolina, and Vermont), habitual offender statutes exist but are not triggered by a third strike conviction for second degree robbery. *Id.*

[17] These are California, Colorado, Florida, Maryland, Nevada, and Oklahoma. *See id.*

### 4. *Punishment in Washington for other offenses*

In the non-POAA context, Washington punishes only one crime with a sentence of mandatory life without parole: aggravated first degree murder. RCW 9.94A.510, .515. Aggravated first degree murder is a level 16 offense, the highest "seriousness level" in the SRA. RCW 9.94A.515. The next most serious level of offense, level 15, includes homicide by abuse and nonaggravated first degree murder. RCW 9.94A.515. In the non-POAA context, a person convicted of those crimes might serve as little as 20 years— far less than life without parole.[18]

In the non-POAA context, Washington imposes mandatory minimum sentences for only five offenses: aggravated and nonaggravated first degree murder, first degree assault involving "force or means likely to result in death or intended to kill the victim," rape in the first degree, and sexually violent predator escape. RCW 9.94A.540(1)(b)-(d). A person convicted of first degree murder faces a 20-year mandatory minimum, while a person convicted

---

[18] For a defendant with no criminal history, the standard range sentence for homicide by abuse or non-aggravated murder is 240-320 months. RCW 9.94A.510. For a defendant with two violent prior offenses, the standard range sentence is 281-374 months. *Id.*; RCW 9.94A.525(9) (if present conviction is for a serious violent offense, count two points for each prior violent conviction and one point for each prior nonviolent felony conviction).

of first degree rape, first degree assault, or sexually violent predator escape faces a mandatory minimum of five years. *Id.* For every other offense, the court may impose a sentence below the standard sentence range if "mitigating circumstances are established by a preponderance of the evidence." RCW 9.94A.535.

The gravity of Witherspoon's third strike offense must not be understated; it was deliberate, and the fact that his victim exhibited uncommon courage during the offense and extraordinary compassion thereafter does not minimize the crime. But neither should that offense be amplified beyond all recognition. To punish it with a sentence greater than that imposed for the most brutal crimes—homicide, first degree assault, and first degree rape—is to disregard two central purposes of the SRA: justice and proportionality. RCW 9.94A.010(1), (2).

Thus, this final *Fain* factor also weighs in favor of a finding of disproportionality.

> 5.    *The proper remedy for the constitutional violation in this case is remand for resentencing under the SRA guidelines*

For the reasons given in the analysis above, RCW 9.94A.570 is unconstitutional as applied to the particular second degree robbery in this case. Article I, section 14 of the Washington Constitution does not permit the

21

imposition of mandatory life without parole—the harshest penalty short of death—on a second degree robber whose victim testified that he neither frightened nor threatened her. Because the POAA is unconstitutional *as applied* to Witherspoon, the proper remedy is to remand for resentencing under the SRA guidelines—without the application of the POAA. *State v. Hunley*, 175 Wn.2d 901, 916, 287 P.3d 584 (2012) (holding a statute unconstitutional as applied does not render it completely inoperable; rather, it prohibits the future application of the statute in a similar context).

At Witherspoon's original sentencing hearing, the State characterized its charging decision as "suspenders and belt." TR (Sentencing) at 30. The State is correct. Its second degree robbery charge also included the aggravating factor that "[t]he defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." RCW 9.94A.535(2)(c). That statute places the determination of whether that aggravating factor exists, and whether it supports a sentence above the standard range, in the hands of the judge. *Id.* At the original sentencing, where the judge felt compelled to impose life without parole, the judge had no reason to address that aggravating factor. The court is free to address it at resentencing.

22

CONCLUSION

The question before us in this case is narrow. We are asked whether it is unconstitutional to force a trial court judge to impose a mandatory sentence of life without parole on a defendant whose third "strike" is a second degree robbery committed in a manner that did not cause physical harm or actual fear. The answer to that question is yes.

This answer is based on the legal description of the crime of second degree robbery (RCW 9A.56.190), the facts of its accomplishment in this case, and the mandatory nature of the penalty.

We have not been asked to rule on whether it would be unconstitutional to sentence a defendant to life without parole for a different crime, or for this crime committed in a different manner. The remedy I would impose is therefore particular to this case. The legislature, not this court, is the body with the power to draft a procedure that would be constitutional in all cases. I express no opinion as to what sort of procedure might comply with article I, section 14 protections. Pursuant to the *Fain* analysis conducted above, I conclude only that the current procedure, according to which a sentencing judge has no discretion to impose a sentence lower than life without parole,

does not comply with state constitutional requirements.[19]   A different

procedure certainly would.[20]

---

[19] Other states have taken a variety of approaches to the problem of disproportionate sentencing in the "three strikes" context—there are no doubt multiple ways this problem could be resolved. In at least four states, persons convicted under habitual offender statutes are automatically entitled to a constitutional proportionality review upon sentencing. *See supra* note 13 (explaining sentencing procedures in Colorado, Louisiana, Mississippi, and West Virginia). In one state, third strike offenders receive mandatory life sentences in most cases, but not where (as in Witherspoon's case) injury or threat of injury is an element of the third strike offense but no injury to the victim actually occurs. MONT. CODE ANN. § 46-18-219(b), § 46-18-222. In those cases, the sentence is discretionary. MONT. CODE ANN. § 46-18-222. See also *supra* note 16, discussing the various penalties less harsh than mandatory life without parole, which are imposed for third strike second degree robbery convictions in the overwhelming majority of jurisdictions.

[20] *See State v. Pillatos*, 159 Wn.2d 459, 470-76, 150 P.3d 1130 (2007) (applying new legislation, designed to fix the sentencing scheme declared unconstitutional in *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), retroactively).

Gordon McCloud, J.

Wiggins, J.

Fairhurst, J.

González, J.

APPENDIX OF "PERSISTENT OFFENDER" LAWS

| State | Mandatory Minimum for Second Degree Robbery Equivalent Committed as Third Strike Offense | Applicable Statutes |
|---|---|---|
| Alabama | 10 years | ALA. CODE § 13A-8-43(2)(b) (third degree robbery equivalent is class C felony), § 13A-5-9(b)(1) (third strike class C felony punished as if class A felony), § 13A-5-6(a)(1) (class A felony punished with 10 years to life) |
| Alaska | 4 years | ALASKA STAT. § 11.41.510 (second degree robbery equivalent is class B felony), § 12.55.125(d)(3) (class B felony as third felony conviction triggers 4 to 7 year sentence) |
| Arizona | 6 years | ARIZ. REV. STAT. ANN. § 13-1902 (second degree robbery equivalent is class 4 felony); § 13-703(C), (J), § 13-706 (third strike class 4 felony triggers 8 year minimum sentence) |
| Arkansas | 5 years | ARK. CODE ANN. § 5-12-102 (second degree robbery equivalent is class B felony), § 5-4-501(a)(1), (2)(C) (third strike class B felony triggers 5 to 30 year sentence) |
| California | 25 years | CAL. PENAL CODE § 212.5(c), § 213(a)(2), § 1192.7(c)(19) (second degree robbery equivalent is serious felony punishable by a 2 to 5 year sentence); § 667(e)(2)(A)(ii) (third serious and/or violent felony conviction triggers minimum 25 year sentence) |

1

| *State* | *Mandatory Minimum for Second Degree Robbery Equivalent Committed as Third Strike Offense* | *Applicable Statutes* |
|---|---|---|
| Colorado | 18 years | COLO. REV. STAT. § 18-4-301 (second degree robbery equivalent is class 4 felony), § 18-1.3-401(1)(V)(A) (presumptive maximum for class 4 felony is 6 years), § 18-1.3-801(1.5)(a) (third strike triggers sentence three times the maximum presumptive range for strike as first offense: 18 years for class 4 felony) |
| Connecticut | 1 year | CONN. GEN. STAT. § 53a-133, § 53a-136, § 53a-35a(8) (second degree robbery equivalent is class D felony, carrying term of not less than 1 to 5 years); § 53a-40(j), § 53a-35a(7) (third strike offense triggers sentence for next most serious degree of felony: 1 to 10 years) |
| Delaware | not applicable (N/A) | DEL. CODE ANN. tit. 11, § 5-831(a)(2), § 11-42-4201(a)(5), (c), § 11-42-4205(b)(5) (second degree robbery equivalent a class E violent felony, punishable by 5 year maximum sentence); § 11-42-4215(a) (may trigger greater sentence than maximum for third felony conviction); § 11-42-4214 (habitual offender statute triggered by four strikes law) |

2

| State | Mandatory Minimum for Second Degree Robbery Equivalent Committed as Third Strike Offense | Applicable Statutes |
|---|---|---|
| District of Columbia | None, unless both priors and current conviction are crimes of violence; in that case, mandatory minimum is 2 years | D.C. CODE § 22-2801 (minimum for first robbery offense is two years); § 22-1804a(a)(1), (2) (third conviction for crime of violence triggers 15 year minimum sentence; otherwise, minimum is standard sentence for current offense) |
| Florida | 15 years | FLA. STAT. § 812.13(1), (2)(c) (second degree robbery equivalent is second degree felony), § 775.084(1)(c)(1)(c), (2)(b), (4)(c)(1)(c) (three-time violent offender mandatory minimum term of 15 years) |
| Georgia | 1 year | GA. CODE ANN. § 16-8-40(a)(2), (b) (statutory term for second degree robbery equivalent is 1 to 20 years), § 17-10-7(a) (second felony repeat offender conviction triggers statutory maximum for underlying offense but gives judge discretion to "probate or suspend the maximum sentence prescribed") |
| Hawaii | 6 years, 8 months | HAW. REV. STAT. § 708-841(1)(b) (second degree robbery equivalent is class B felony), § 706-06.5(1)(b)(iii) (third strike class B felony triggers sentence of 6 years, 8 months before eligible for parole) |

| State | Mandatory Minimum for Second Degree Robbery Equivalent Committed as Third Strike Offense | Applicable Statutes |
|---|---|---|
| Idaho | 5 years | IDAHO CODE ANN. § 18-6501, § 18-6502(2), § 18-6503 (second degree robbery equivalent presumptive sentence of 5 years to life); § 19-2514 ("persistent violator" third strike felony triggers sentence of 5 years to life) |
| Illinois | 6 years | 720 ILL. COMP. STAT. 5/18-1(a), (c), 730 ILL. COMP. STAT. 5/5-4.5-35(a) (second degree robbery equivalent is class 2 felony triggering 3 to 7 year sentence); 5/5-4.5-95(b) (habitual criminal third strike class 1 or 2 felony conviction triggers class X offender status); 5/5-4.5-25 (class X offender gets 6-30 years) |
| Indiana | Advisory minimum of 4 years | IND. CODE § 35-42-5-1(2) (second degree robbery equivalent is class C felony), § 35-50-2-6(a) (class C felony advisory sentence is 4 years), § 35-50-2-8(h) ("habitual offender" third strike felony triggers sentence of "not less than the advisory sentence for the underlying offense nor more than three (3) times the advisory sentence for the underlying offense") |

| State | Mandatory Minimum for Second Degree Robbery Equivalent Committed as Third Strike Offense | Applicable Statutes |
|---|---|---|
| Iowa | 3 years without parole | IOWA CODE § 711.1(1)(b), § 711.3, § 902.9(1)(d) (second degree robbery equivalent is Class C felony triggering maximum sentence of 10 years); § 902.8 ("habitual offender" third felony conviction triggers sentence of no more than 15 years or 3 without parole eligibility) |
| Kansas | N/A (no habitual offender statute for crimes committed after 1993) | KAN. STAT. ANN. § 21-5420(a), (c)(1), § 21-6804 (second degree robbery equivalent is level 5 personal felony with presumptive term of 50 months) |
| Kentucky | 10 years without parole | KY. REV. STAT. ANN. § 515.030, § 532.020(1)(b) (second degree robbery equivalent is class C felony, presumptive term of 5 to 10 years); § 532.080(3), (6)(b) ("persistent felony offender" class C felony as third strike triggers mandatory minimum of 10 years) |
| Louisiana | Life without parole | LA. REV. STAT. ANN. § 14:65, § 14:2(B)(23) (second degree robbery equivalent is violent crime with maximum term of 7 years); § 15:529.1(A)(3)(b) (third strike violent crime triggers sentence of life without parole where two priors are also crimes of violence) |

| State | Mandatory Minimum for Second Degree Robbery Equivalent Committed as Third Strike Offense | Applicable Statutes |
|---|---|---|
| Maine | 9 months | ME. REV. STAT. tit. 17-A § 651(1)(B)(2), 17-A § 1252(2)(B) (second degree robbery equivalent is class B crime carrying maximum term of 10 years); 17-A § 1252(4-A) (third strike felony, such as robbery, triggers sentencing class that is one class higher than it would otherwise be); 17-A § 1252(2)(A), (5-A)(A)-(C) (class A felony triggers sentence minimum of 9 months to 30 years) |
| Maryland | 25 years without parole | MD. CODE ANN., CRIM. LAW § 3-402, § 14-101(a)(9), (c)(1)(i), (2), (3) (second degree robbery equivalent is crime of violence, third crime of violence triggers minimum sentence of 25 years) |
| Massachusetts | Life without parole | MASS. GEN. LAWS ch. 265, § 21 (maximum sentence allowable for second degree robbery equivalent is life), ch. 279, § 25(b) ("habitual criminal" third felony conviction for second degree robbery equivalent triggers maximum sentence allowable by law for the underlying crime, without parole) |
| Michigan | None | MICH. COMP. LAWS § 750.530 (second degree robbery equivalent triggers maximum sentence of 15 years); § 769.11(1)(a) (third strike offender may be sentenced to twice the maximum for the underlying crime) |

| *State* | *Mandatory Minimum for Second Degree Robbery Equivalent Committed as Third Strike Offense* | *Applicable Statutes* |
|---|---|---|
| Minnesota | 10 years without parole | MINN. STAT. § 609.24 (second degree robbery equivalent triggers maximum sentence of 10 years), § 609.1095(1)(d), (3) (dangerous offender third violent felony triggers at least the length of the presumptive sentence for the underlying offense; violent felonies include second degree robbery equivalent) |
| Mississippi | Life without parole | MISS. CODE ANN. § 97-3-73; *Ashley v. State*, 538 So. 2d 1181 (Miss. 1989) (second degree robbery equivalent is crime of violence); MISS. CODE ANN. § 99-19-83 (where any of three strike offenses was crime of violence, defendant shall be sentenced to life term without parole) |
| Missouri | 5 years | MO. REV. STAT. § 569.030, § 558.011(2) (second degree robbery equivalent is class B felony triggering sentence of 5 to 15 years); § 558.016(3), (7)(2), § 558.011(1) (persistent offender class B felony may be punished as if class A felony, triggering sentence of 10 to 30 years) |

7

| State | Mandatory Minimum for Second Degree Robbery Equivalent Committed as Third Strike Offense | Applicable Statutes |
|---|---|---|
| Montana | 10 years (first 5 years without parole) | MONT. CODE ANN. § 45-5-401(1)(b), (2), § 46-18-219 (b) (second degree robbery equivalent triggers term of 2 to 40 years); § 46-18-501 (definition of "persistent felony offender"), § 46-18-219(1)(b)(iv), § 46-18-222(5) (if third strike offense did not result in any serious injury to the victim and if weapon was not used, then judge has discretion to sentence defendant to less than a life term); § 46-18-502(2), (3) (persistent felony offender sentenced to mandatory minimum of 10 years) |
| Nebraska | 10 years | NEB. REV. STAT. § 28-324, § 28-105(1) (sentence for second degree robbery equivalent, class II felony, is 1 to 50 years), § 29-2221(1) (person convicted on separate occasions of two crimes triggering sentences of at least one year is "habitual criminal" who receives minimum sentence of 10 years) |
| Nevada | 25 years (parole eligible after 10 years) | NEV. REV. STAT. § 200.380(1)(a), (b), (2) (second degree robbery equivalent is category B felony, penalty of 2 to 15 years), § 207.012(1)(a),(b)(3), (2) ("habitual felon" defined as two prior second degree robbery equivalent convictions, mandatory minimum of 25 years, eligibility for parole after 10 years) |

8

| *State* | *Mandatory Minimum for Second Degree Robbery Equivalent Committed as Third Strike Offense* | *Applicable Statutes* |
|---|---|---|
| New Hampshire | N/A (no persistent offender statute) | N.H. REV. STAT. ANN. § 636:1(I)(b), (III), § 651:2(II)(b) (second degree robbery equivalent is class B felony, triggering maximum term of 7 years) |
| New Jersey | 10 years | N.J. STAT. ANN. § 2C:15-1(a)(2), (b), § 2C:43-7.1(b), § 2C:43-7(a)(3) (person convicted of crime including second degree robbery equivalent, who has previously been convicted of two or more crimes, shall be sentenced to a fixed term between 10 and 20 years) |
| New Mexico | 7 years without parole | N.M. STAT. ANN. § 30-16-2 (second degree robbery equivalent is third degree felony), § 31-18-15(A)(9) (third degree felony as first offense triggers 3 year sentence), § 31-18-17(B) (person with 2 prior felony convictions is habitual offender; sentence for habitual offender shall be increased by 4 years) |
| New York | 4 years | N.Y. PENAL LAW § 160.05 (second degree robbery equivalent is class D felony), § 70.00(2)-(4) (sentence for class D felony as first offense is 1 to 7 years, with judicial discretion for imposing a fixed term of 1 year or less), § 70.06(1), (3)(d) ("second felony offender" term is 4 to 7 years) |

9

| State | *Mandatory Minimum for Second Degree Robbery Equivalent Committed as Third Strike Offense* | *Applicable Statutes* |
|---|---|---|
| North Carolina | 77 months | N.C. GEN. STAT. § 14-87.1 (second degree robbery equivalent is class G felony); § 14-7.2, § 14-7.6 ("habitual felon" must be sentenced at a class level four higher than underlying felony); § 14-7.1 ("habitual felon" is any person convicted of a felony three times); § 15A-1340.17(c) (class C felony as third offense triggers presumptive sentence of 77-96 months) |
| North Dakota | No minimum | N.D. CENT. CODE § 12.1-22-01(1), (2), § 12.1-32-01(4) (second degree robbery equivalent is class C felony, carrying a maximum penalty of 5 years and/or fine of $10,000); § 12.1-32-09(1)(c), (2)(c) (an adult who has previously been convicted of two felonies of class C or above is an "habitual offender"; third strike offense of class C triggers maximum sentence of 10 years) |
| Ohio | 1 year | OHIO REV. CODE ANN. § 2911.02(A)(3), (B), § 2929.14(A)(3)(b) (second degree robbery equivalent is third degree felony, triggering minimum term of 9 months); § 2929.14(A)(3)(a) (upon third conviction or guilty plea, person convicted of third degree felony shall be sentenced to term of 1 to 5 years) |

| *State* | *Mandatory Minimum for Second Degree Robbery Equivalent Committed as Third Strike Offense* | *Applicable Statutes* |
|---|---|---|
| Oklahoma | 20 years | OKLA. STAT. tit. 21, § 791, § 792, § 794, § 797, § 799, tit. 57, § 571 (second degree robbery equivalent is a nonviolent offense, triggering maximum term of 10 years); OKLA. STAT. tit. 21, § 51.1(B) (third felony conviction within 10 year period triggers sentence of 20 years to life) |
| Oregon | N/A (no habitual offender statute) | OR. REV. STAT. § 164.395(1)(a), (2), § 161.605(3) (second degree robbery equivalent is a class C felony, triggering maximum term of 5 years) |
| Pennsylvania | N/A (second degree robbery equivalent does not trigger habitual offender statute) | 18 PA. CONS. STAT. § 3701(a)(1)(iv), (b), § 106(a)(4), (b)(4) (second degree robbery equivalent is second degree felony, triggering maximum term of 7 years); 42 PA. CONS. STAT. § 9714(g) (second degree robbery equivalent not a "'crime of violence'" and does not trigger Pennsylvania's habitual offender statute) |

| State | *Mandatory Minimum for Second Degree Robbery Equivalent Committed as Third Strike Offense* | *Applicable Statutes* |
|---|---|---|
| Rhode Island | 5 years | R.I. GEN. LAWS § 11-39-1(a), (b) (second degree robbery equivalent as first offense triggers minimum sentence of five years), § 12-19-21(a) (person convicted of a felony three times and sentenced to more than 1 year of imprisonment is an "habitual criminal" and shall be sentenced to not more than 25 years in addition to sentence for which he or she was last convicted) |
| South Carolina | N/A (second degree robbery equivalent does not trigger the habitual offender statute) | S.C. CODE ANN. § 16-11-325, § 16-1-10(A)(4), (D) (second degree robbery equivalent is a class D felony and triggers maximum sentence of 15 years); § 16-1-120(1) (repeat offender statute triggered only by class A, B, or C felonies or exempt offenses punishable with 20 year sentence) |
| South Dakota | No minimum | S.D. CODIFIED LAWS § 22-30-1, § 22-30-6, § 22-30-7, § 22-6-1(7) (second degree robbery equivalent is class 4 felony, triggering maximum term of 10 years); § 22-7-7 (second or third felony conviction triggers sentence for felony of next higher class); § 22-6-1(6) (class 3 felony punishable by maximum term of 15 years) |

| *State* | *Mandatory Minimum for Second Degree Robbery Equivalent Committed as Third Strike Offense* | *Applicable Statutes* |
|---|---|---|
| Tennessee | 6 years | TENN. CODE ANN. § 39-13-401, § 40-35-105(b) (second degree robbery equivalent is a range I class C felony, triggering minimum term of 3 years); § 40-35-105(a)(2), § 40-35-106(a)(1), (c), § 40-35-112(b)(3) (multiple offender second degree robbery equivalent triggers range II class C felony, carrying minimum term of 6 years) |
| Texas | 5 years | TEX. PENAL CODE ANN. § 29.02(a)(2), (b) (second degree robbery equivalent is second degree felony), § 12.33(a) (second degree felony punishable by 2 to 20 years), § 12.42(b) (person convicted of second degree felony, who has previously been convicted of a felony, shall be sentenced for a felony of the first degree), § 12.32(a) (first degree felony punishable by term of 5 to 99 years or life) |

| State | Mandatory Minimum for Second Degree Robbery Equivalent Committed as Third Strike Offense | Applicable Statutes |
|---|---|---|
| Utah | 5 years | UTAH CODE ANN. § 76-6-301(1)(b), (3), § 76-3-203(2), § 76-3-203.5(1)(c)(i)(BB), (1)(b), (2)(b) (second degree robbery equivalent is second degree violent felony, punishable by term of 1 to 15 years; if defendant is a habitual violent offender, the penalty for a second degree felony is as if the conviction were for a first degree felony; a habitual violent offender is a person convicted of any "violent" felony who has also been convicted of a violent felony on any two previous occasions; minimum sentence for first degree felony is 5 years) |
| Vermont | N/A ("habitual criminal" statute triggered only where there were three prior convictions) | VT. STAT. ANN. tit. 13, § 608(a), § 2507 (second degree robbery equivalent triggers maximum term of 10 years; § 11 (habitual criminal enhanced sentence permitted for fourth felony conviction, triggering maximum life sentence) |

| *State* | *Mandatory Minimum for Second Degree Robbery Equivalent Committed as Third Strike Offense* | *Applicable Statutes* |
|---|---|---|
| Virginia | Life without possibility of parole until defendant is 60 (if already served 10 years) or 65 (if already served 5 years) | VA. CODE ANN. § 18.2-58, § 18.2-288(2) (second degree robbery equivalent crime of violence triggers minimum term of 5 years up to life); § 19.2-297.1(A)(e), (C) (third act of violence conviction, including second degree robbery equivalent, shall be sentenced to life without parole, subject to exceptions for persons age 60 or older) |
| Washington | Life without parole | RCW 9A.56.190, 9A.56.210, 9A.20.021(1)(b) (second degree robbery is a class B felony, triggering 10 year term or $20,000 fine or both term and fine); 9.94A.570, 9.94A.030(32)(o), (37)(a)(i), (ii) (persistent offender third most serious offense conviction triggers sentence of life without parole) |
| West Virginia | Life | W. VA. CODE R. § 61-2-12(b) (second degree robbery equivalent triggers term of 5 to 18 years), § 61-11-18(c) (third felony offense conviction triggers life sentence) |

| State | Mandatory Minimum for Second Degree Robbery Equivalent Committed as Third Strike Offense | Applicable Statutes |
|---|---|---|
| Wisconsin | No minimum | WIS. STAT. § 943.32(1)(b), § 939.50(1)(e), (3)(e) (second degree robbery equivalent is class E felony, triggering maximum term of 15 years); § 973.12, § 939.62(1)(c), (2) (person convicted of second degree robbery equivalent as second strike is a "repeater" and shall have his or her sentence increased by not more than 6 years) |
| Wyoming | 10 years | WYO. STAT. ANN. § 6-2-401(a)(ii), (b) (second degree robbery equivalent triggers term not to exceed 10 years); § 6-1-104(a)(xii) (second degree robbery equivalent is violent felony), § 6-10-201(a)(i), (ii), (b)(i) (person convicted of a "violent felony" who has previously been convicted of two other felonies is an "habitual criminal," punishable by term of 10 to 50 years if he or she has only two prior convictions) |