FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 JUL 23 AM 8: 10

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76546-9-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| VAN ARMAN, KEVIN JOHN, | ) | |
| DOB: 06/01/1991, | ) | |
| | ) | |
| Appellant. | ) | FILED:  July 23, 2018 |

SCHINDLER, J. — A jury convicted Kevin John Van Arman of possession of a

stolen motor vehicle while on community custody.  Van Arman seeks reversal.  Van

Arman contends the court improperly admitted ER 404(b) propensity evidence about car

theft tools.  Van Arman argues that absent the erroneous admission of the ER 404(b)

evidence, insufficient evidence supports the jury finding that he knew the vehicle was

stolen.  We affirm.

## FACTS

Sandra and John Stoddard live in a retirement center in Arlington.  They own a

gold 2011 Honda Odyssey minivan.  John uses a wheelchair.[1]  The Honda is

wheelchair accessible and has handicapped license plates.

_____

[1] We refer to Sandra and John Stoddard by their first names for purposes of clarity and mean no
disrespect by doing so.

The Honda minivan is John's only means of transportation. The Honda has a ramp that unfolds and permits John to drive his wheelchair up the ramp and into the minivan. The minivan is equipped with an alarm to alert the driver that the wheelchair is not fixed into place.

On October 24, 2016, Sandra drove the Honda home at around 3:30 p.m. She parked the Honda in their reserved parking spot at the retirement center. At around 2:30 p.m. the next day, Sandra saw that the Honda was no longer in the parking spot. John called 911 and reported the Honda stolen.

Arlington Police Department Sergeant Rory Bolter responded to the 911 call at around 3:45 p.m. on October 25. On his way to the Stoddard residence, Sergeant Bolter drove past a McDonald's and saw a gold Honda minivan with handicapped license plates in the parking lot. Sergeant Bolter verified that the Honda belonged to the Stoddards.

Sergeant Bolter pulled into the parking lot and called for backup. There were two people in the Honda. A man later identified as Kevin John Van Arman was asleep in the driver's seat of the Honda minivan. A woman later identified as his spouse Anjellica Van Arman was asleep in the front passenger's seat.

Sergeant Bolter placed Kevin Van Arman in custody and read him his Miranda[2] rights. Van Arman said the car belonged to Wesley Olson's grandmother, and she let Olson use it. Van Arman told Sergeant Bolter that Olson gave him the Honda at approximately 2:00 p.m. the day before.

---

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The police called John and Sandra. Sandra went to pick up the Honda minivan at the McDonald's. The inside of the Honda was full of items that did not belong to either Sandra or John. Sandra gave the police permission to search the Honda.

Sergeant Bolter said it appeared as if someone had been living in the vehicle. A Safeway shopping cart was in the back of the van, secured to the driver's seat and the floor with zip ties. The shopping cart and the Honda interior were full of food and clothing. The car smelled strongly of cigarette smoke. There were cigarette butts in the ashtray, on the floor, and throughout the van. There was "fresh" vomit on the inside of the driver's side door and the doorframe of the van. There were other stains on the floorboards. The wires had been ripped out of the dashboard. There was an obviously new dent on the rear fender of the Honda.

The officers found a green backpack in the Honda. The green backpack had a set of keys attached to it and there were several other keys inside of the backpack. Although many of the keys were on a single Dodge keychain, some of the keys looked like Chevrolet keys, and other keys looked like Chrysler keys. Many of the keys were "shaved" and rounded in appearance and did not match the automobile brand. The backpack also contained a small window punch used to shatter a window. A wallet inside the backpack contained a Washington State driver's license issued to Van Arman. The officers found pliers and a drill pump near the backpack. The officers also found a debit card belonging to Van Arman in the cup holder in the center console of the Honda.

The State charged Van Arman with possession of a stolen vehicle committed while on community custody in violation of RCW 9A.56.068 and RCW 9.94A.525(19).

3

Before trial, Van Arman filed a motion in limine to exclude all evidence seized from the green backpack found in the Honda under ER 402 and ER 403. Van Arman argued the items found in the backpack were not relevant under ER 402 and the prejudice of introducing the evidence outweighed the probative value under ER 403. The court denied the motion to exclude the evidence, ruling the probative value outweighed prejudice.

Sandra and John Stoddard testified at trial about the stolen Honda and the condition of the minivan when it was returned to them. Sandra and John testified that neither of them knew or gave permission to Van Arman or Olson to use the minivan. Sandra and John testified that they kept a "valet key" in the glove box of the Honda. Sandra could not remember for certain that she locked the Honda on October 24.

Sergeant Bolter testified that in his experience, "shave keys" and "jiggle keys" are used by people who have stolen cars. He explained that shave keys have rounded edges that make them easier to fit into the lock of numerous different vehicles.

Van Arman stipulated that he was under community custody on the date of the charged crime.

At the conclusion of the evidence, the defense proposed giving a jury instruction to limit the jury's consideration of the car theft tools. The court gave the defense proposed jury instruction. Jury instruction 15 states:

> Certain evidence has been admitted in this case for only a limited purpose. This evidence of alleged car theft tools may be considered by you only for the purpose of defendant's knowledge that the vehicle had been stolen. You may not consider it for any other purpose. Any discussion of the evidence during your deliberations must be consistent with this limitation.

The jury convicted Van Arman as charged. Van Arman appeals.

ANALYSIS

Van Arman argues the court improperly admitted evidence of the car theft tools found in his green backpack under ER 404(b). But the record establishes Van Arman moved to exclude evidence of car theft tools on the basis of only ER 402 and ER 403. We reject the argument made for the first time on appeal that the court improperly admitted the evidence under ER 404(b). State v. Kendrick, 47 Wn. App. 620, 634, 736 P.2d 1079 (1987) (general relevance objection is "insufficient to preserve appellate review based on ER 404(b)").

Van Arman argues that absent the erroneous admission of the ER 404(b) evidence, insufficient evidence supports the jury finding that he knowingly possessed a stolen motor vehicle. Van Arman contends no witness saw him take the Honda, he did not admit guilt, and there was no evidence that he caused the damage to the vehicle.

The State has the burden of proving the elements of a crime beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); State v. Borrero, 147 Wn.2d 353, 364, 58 P.3d 245 (2002). Under the Fourteenth Amendment and the Sixth Amendment to the United States Constitution and article I, sections 21 and 22 of the Washington State Constitution, a criminal defendant is entitled to " 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.' " Apprendi v. New Jersey, 530 U.S. 466, 476-77, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)[3] (quoting United States v. Gaudin, 515 U.S. 506, 510, 115 S. Ct. 2310, 132 L. Ed. 2d 444 (1995)); State v. Polo, 169 Wn. App. 750, 762-63, 282 P.3d 1116 (2012); State v. Johnson, 185 Wn. App. 655, 666, 342 P.3d 338 (2015).

---

[3] Alteration in original.

5

In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Witherspoon, 180 Wn.2d 875, 883, 329 P.3d 888 (2014); State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A challenge to the sufficiency of the evidence admits the truth of the evidence. Witherspoon, 180 Wn.2d at 883. Circumstantial evidence and direct evidence are equally reliable. State v. Kintz, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." Salinas, 119 Wn.2d at 201. We defer to the trier of fact on "issues of witness credibility." Witherspoon, 180 Wn.2d at 883.

Under RCW 9A.56.068(1), a person commits the crime of possession of a stolen vehicle "if he or she . . . [possesses] a stolen motor vehicle."[4] The State must prove beyond a reasonable doubt that the person knowingly possessed a stolen motor vehicle. RCW 9A.56.140(1). RCW 9A.56.140(1) defines the crime of "possessing stolen property" as "knowingly to receive, retain, possess, conceal, or dispose of stolen property knowing that it has been stolen and to withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto." A person acts knowingly when he or she is "aware of a fact" or "has information which would lead a reasonable person in the same situation to believe that facts exist." RCW 9A.08.010(1)(b).

There is no dispute the Honda belonged to Sandra and John Stoddard. Sandra and John testified they did not give anyone permission to borrow the Honda minivan.

_____

[4] Second alteration in original.

Neither Sandra nor John knew Van Arman, his spouse, or Olson. Sandra parked the Honda in their reserved parking space at approximately 3:30 p.m. on October 24, and by 2:30 p.m. the next day, it was gone.

The Honda is wheelchair accessible and contains safeguards to make sure the wheelchair locks securely into place. Sandra testified that if the wheelchair is not secured or not in the car, "it gives me a warning on the dashboard." Sandra stated an alarm will start beeping to alert her that the wheelchair is not secure. The alarm will continue to beep until "the chair is secure or there's a button you can push that will take the noise away." Sandra testified that if someone does not know to press the button, the alarm will continue to "beep incessantly."

Sergeant Bolter saw the Honda minivan at around 3:45 p.m. on October 25 in the McDonald's parking lot near the Stoddards' residence. Van Arman was asleep in the driver's seat. Although the Honda had been missing for at most 24 hours, the Honda looked as though "somebody had been staying in the vehicle for a period of time." The Honda was filled with food and dirty clothes and reeked of "stale cigarette smoke." Fresh vomit covered the inside of the driver's side door and running board and smoked cigarettes butts were throughout the car. The inside of the minivan "smelled awful." Sandra drove the minivan home with all four windows down and her shirt over her nose because the smell was so strong.

The police testified that zip ties secured a Safeway shopping cart to the driver's seat and floor of the minivan where the wheelchair should have been parked. The alarm that alerts the wheelchair is not secure was beeping. The wires connected to the

7

alarm had been "pulled out of the dashboard" but not cut, so the alarm continued to beep.

Sufficient evidence supports the jury finding that Van Arman knew the vehicle was stolen. We conclude sufficient evidence supports the conviction of possession of a stolen motor vehicle while on community custody.

We affirm the conviction.

Schindler, J.

WE CONCUR:

Andrus, J.

Appelwick, CJ