IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| THE STATE OF WASHINGTON<br><br>Respondent,<br><br>v.<br><br>KRISTOPHER KEITH GREENING,<br><br>Appellant. | No. 77639-8-I<br><br><br>UNPUBLISHED OPINION<br><br><br>FILED: June 3, 2019 |

SCHINDLER, J. — A jury convicted Kristopher Keith Greening of one count of rape of a child in the first degree. Greening seeks reversal, arguing insufficient evidence supports the conviction and the court erred in denying his motion to exclude his admission and testimony that he engaged in anal sex. We affirm.

FACTS

Beginning in August 2010, Kristopher Keith Greening lived with J.F. and her four minor children in Mount Vernon. They moved from Mount Vernon to Sedro Woolley, to the "Chinook house" in Birch Bay, and then to Blaine. Greening, J.F., and the children lived in the Chinook house between July 2014 and December 2014 and in the Blaine house between January 2015 and October 2015.

Greening and J.F. worked long hours with unpredictable schedules. J.F. worked three jobs, leaving home early in the morning and not returning until late at night. Greening worked on a rotating schedule and spent time alone with the children.

In early October 2015, 11-year-old A.C. spent the night at her friend R.F.'s house. A.C. told R.F. that Greening raped her "in the back area" but not "in the front." A.C. asked R.F. not to tell anyone about the rape because she was "scared."

On Monday, October 5, R.F. told A.C.'s best friend J.B. that A.C. said Greening raped her. When J.B. asked A.C. if "it was true," A.C. started crying. That day after school, J.B. told her father. J.B.'s father immediately called J.F.

J.F. took A.C. to PeaceHealth St. Joseph Medical Center that day. A sexual assault nurse examined A.C. During the approximately 90-minute examination, A.C. told the nurse that "within the last week some time," Greening "touched her under" her clothes in her "butt." A.C. told the nurse "this had been going on" for "years" and sometimes "it hurts." Because there was no physical evidence, the nurse referred A.C. to a forensic interviewer at Brigid Collins Family Support Center.

Brigid Collins child forensic interviewer Gayle Tierney met with A.C. and Whatcom County Sheriff's Detective Julie Baker. Tierney videotaped the interview. Using open-ended and nonsuggestive questions, Tierney interviewed A.C. for approximately 45 minutes. A.C. had "a very difficult time" during the interview and did not want to talk in detail about the sexual assault. Nonetheless, Tierney concluded A.C. had been raped on multiple occasions.

On October 11, 2015, Blaine Police Detective John Landis spoke with J.B. by telephone and interviewed J.F. and A.C.'s other friend R.F.

Detective Landis arrested Greening. During a 40- to 45-minute interview, Greening was "very talkative, very open." Greening told Detective Landis about his relationship with J.F. and that "things weren't going as well" in the last year. Greening admitted he "had anal sex with" J.F. Greening told Detective Landis he felt "closest with" A.C. and he often "cuddled" with her. When Detective Landis told Greening that A.C. said he raped her, Greening "got quiet" and "closed down."

On October 19, 2015, the State charged Greening with rape of a child in the first degree that occurred between January 1, 2015 and October 6, 2015, count 1; and rape of a child in the first degree that occurred between June 1, 2014 and January 1, 2015, count 2. Greening pleaded not guilty.

Pretrial, Greening moved to exclude any testimony that he engaged in anal sex. The court denied the motion.

During the five-day jury trial, the State called a number of witnesses to testify, including A.C., her mother J.F., her friends J.B. and R.F., the St. Joseph sexual assault nurse examiner, Brigid Collins forensic interviewer Tierney, and Detective Landis.

Thirteen-year-old A.C. testified that Greening anally raped her one to three times a week for multiple years. However, A.C. testified about two specific times Greening anally raped her.

A.C. testified that the "last time" Greening anally raped her was during the 2015 school year. A.C. testified that the rape occurred while she and her two younger siblings were watching the movie Madagascar at the Blaine house with Greening. A.C.

3

said the living room was dark except for the light from the television and she and Greening were together on a couch under a blanket.

> Q. Were you cuddling at this time?
> A. Yeah.
> Q. And when you are in that position on the couch, were you facing [Greening] or facing away from [Greening]?
> A. Away.
> Q. Was [Greening] facing away from you or toward you?
> A. Towards.
> Q. Tell us what happened.
> A. [Greening], um, what do you mean exactly?
> Q. Well, you told us that he raped you.
> A. Yes.
> Q. And you told us that he — and you are drawing us a picture and telling us how it happened. Could you tell us how the rape happened?
> A. He pulled down my pants a little bit and yeah.
> Q. And what?
>      Is this hard for you?
> A. (Witness nods).
> Q. It's okay. We can take some time. Pulled down your pants and what happened?
> A. He touched me in inappropriate places.
>      . . . .
> Q. . . . Can you tell me where he touched you?
> A. My butt.
> Q. What did he touch you with?
> A. His privates.
> Q. Okay. When you say "privates", what do you mean?
> A. Um, his penis.
> Q. Okay. Did he touch you on the inside or outside of your butt?
> A. On the inside.

A.C. testified she was "too scared" to move. A.C. said the rape did not last "for very long" and neither one of them "ma[d]e any noise." A.C. testified her younger brother was watching the movie while sitting on a different section of the couch and her younger sister was watching the movie while sitting in a chair.[1] A.C. drew a diagram for

---

[1] In October 2015, A.C.'s younger sister and brother were six and seven years old.

the jury of the living room and marked the location of the furniture and where each individual was sitting.

A.C. testified that during a weekend sleepover with R.F., they "were sharing a bunch of secrets" and she told R.F. that Greening "was physically abusing me." A.C. told R.F. that Greening "raped me" and "[i]t was all in the back area." A.C. said R.F. "started crying" and "I cried with her." A.C. told R.F. not to tell anyone because she was "scared" Greening "would come after me or something."

During cross-examination, A.C. testified about additional details of the rape at the Blaine house.

Q. Okay. So the way I see it here, and I guess first of all I ask, were you sitting or were you laying down?
A. I was laying down.
Q. You were laying down?
A. Uh-huh.
Q. And on your side, on your back, on your front?
A. On my side.
Q. On your side. And you were fully clothed?
A. Yes.
Q. What does that mean?
A. It means shirt, underwear, pants.
Q. Jeans?
A. Um, normally or probably something comfortable because I didn't like jeans at the time.
Q. Sweats?
A. Yeah, sweats or yoga pants, something like that.
Q. Or what?
A. Yoga pants.
Q. Okay. Were you wearing underwear?
A. Yes.
Q. Okay. And, um, in that picture there that you have marked, you have [Greening] right next to you or behind you, I'm trying to understand, where was he sitting?
A. He was laying down and he was right behind me.
Q. So he was laying down behind you?
A. Yes.
Q. And you were laying down in front of him?
A. Yes.

Q. Was his head where your head would be?
A. Yes.
Q. It wasn't like the opposite where his head was at your feet?
A. His head was next to mine.

A.C. testified she could not remember as much about the rape at the Chinook house because it happened "many, many months earlier."

Q. Do you recall another time that this did happen that you can describe for us?
A. Um, I can't describe very well but I sort of remember another time.

A.C. said Greening asked her to sit on the couch and "read with him."

Q. Okay. Can you tell us what happened?
A. Um, so he asked me to read with him so we sat on the couch and I read to him.
Q. Was it the same couch?
A. No. It was a different house and different couch.
Q. Okay. All right. So, you are reading with him on the couch. Were you getting close with him?
A. Yes.
Q. Cuddling?
A. Yes.
Q. Okay. And could you tell us about the position with you and him?
A. We were laying down.
Q. Laying down?
A. Uh-huh.
Q. Were you facing toward him or away from him?
A. Away.
Q. Was he facing toward you or away from you?
A. Towards.
Q. Can you tell us what happened?
A. He did the exact same thing as the last story.

A.C. testified that when Greening raped her, "[i]t was scary" and she felt physical pain in her "butt."

R.F. testified that during the weekend sleepover, A.C. told her "a lot of details" about Greening raping her. R.F. testified that A.C. told her Greening raped her "in the back area." R.F. testified that when A.C. first talked about the rape, A.C.'s "face was

6

sad" but her voice was "very angry." R.F. said that when "we started discussing it more," they both were crying. R.F. testified that after the sleepover, they did not discuss the rape "because she didn't want to because it was not — she didn't feel very good about it." R.F. testified she told their friend J.B. about the rape at school on Monday.

Detective Landis testified that Greening said he and J.F. engaged in anal sex. Greening told Detective Landis he had a very "close" relationship with A.C.

Q. Okay. And did you ever ask [Greening] about any sexual relationships that he had with [J.F.]?
A. Yes.
Q. And what did he indicate to you?
A. He indicated that he had anal sex with [J.F.].
Q. And did you ask about any of the relationships with the children?
A. I did.
Q. And what was his response?
A. He talked about he was close with the kids, ah, and taking care of them, ah, um, but the closest one he was with was with [A.C.].

Greening testified. Greening adamantly denied ever having sexual intercourse with A.C. or being sexually aroused by her. Greening testified that while watching "a cartoon" at the Blaine house, he sat on the couch "cuddling with [A.C.] and [her younger sister], one on each side" of him. Greening testified he did not "recall a blanket" but admitted, "That was one thing we did on movie nights is, like, when we're watching a movie you're allowed to go grab your own blanket, your own pillow."

Greening testified he was "shocked" when he "heard about these allegations." According to Greening, A.C. "was very angry with me" and "[a] lot of it had to do with groundings."

Greening said J.F. consented to having anal sex with him during their relationship.

Q   Okay. You were in a romantic relationship —
A   Yes, sir.
Q   — with J.F.?
A   Uh-huh.
Q   Did you have sexual relations with her?
A   Yes, sir.
Q   [J.F.]?
A   I did.
Q   And could you describe that to the jury, please?
A   We were very intimate. Both actually very sexually active people.
Q   There's been testimony by [Detective] Landis that you said that you had had anal sex with her?
A   That has happened.
Q   With [J.F.]?
A   Yes, sir.
Q   And was that consensual?
A   Yes, it was. It was one of those things that had been agreed by both parties.

Greening denied preferring only anal intercourse.

Two defense witnesses testified that during the interviews with A.C., she did not say that Greening raped her multiple times per week.

In rebuttal, J.F. testified that during the last five months of her relationship with Greening, they engaged in only anal intercourse. J.F. said that although she consented, Greening was the person who "asked for or desired" that type of intercourse. J.F. testified that she never talked to A.C. or any of her children about sex with Greening.

The jury convicted Greening of rape of a child in the first degree between January 1 and October 6, 2015, count 1. The jury found Greening not guilty of rape of a child in the first degree between June 1, 2014 and January 1, 2015, count 2.

ANALYSIS

Greening seeks reversal, arguing (1) insufficient evidence supports his conviction of rape of child in the first degree and (2) the court erred in denying his motion in limine to exclude testimony that he engaged in anal sex.

1. Sufficiency of the Evidence

Greening asserts sufficient evidence does not support his conviction of rape of a child in the first degree.

Evidence is sufficient to support a conviction if any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. State v. Johnson, 188 Wn.2d 742, 750-51, 399 P.3d 507 (2017). A challenge to the sufficiency of the evidence admits the truth of the State's evidence. State v. Witherspoon, 180 Wn.2d 875, 883, 329 P.3d 888 (2014). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In determining sufficiency, circumstantial evidence is no less reliable than direct evidence. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on "issues of witness credibility." Witherspoon, 180 Wn.2d at 883.

The State has the burden to prove every element of the crime charged beyond a reasonable doubt. U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3; In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Winship, 397 U.S. at 364; State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). Sufficiency of the

evidence is a question of constitutional law that we review de novo. Rich, 184 Wn.2d at 903.

The State charged Greening in count 1 with rape of a child in the first degree in violation of RCW 9A.44.073(2). The to-convict jury instruction states, in pertinent part:

> To convict the defendant of the crime of Rape of a Child in the First Degree, as charged in Count I, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) Between the 1st day of January, 2015 and the 6th day of October, 2015, the defendant had sexual intercourse with A.C. dob[2] 6/22/04;
> (2) That A.C. dob 6/22/04 was less than twelve years old at the time of the sexual intercourse and was not married to the defendant;
> (3) That A.C. dob 6/22/04 was at least twenty-four months younger than the defendant; and
> (4) That this act occurred in the State of Washington.

Greening cites State v. Jensen, 125 Wn. App. 319, 104 P.3d 717 (2005), to argue sufficient evidence does not support his conviction. Greening asserts A.C.'s "generic" testimony "about being anally raped up to three times per week for some unspecified period of time is so vague and uncertain that it cannot support a conviction." In Jensen, we reversed a conviction for child molestation. Jensen, 125 Wn. App. at 328. We held that "[i]n cases involving a resident child molester, the alleged victim's generic testimony can be used to support multiple counts." Jensen, 125 Wn. App. at 327. However,

> [a]t a minimum, the alleged victim must be able to describe (1) the kind of act or acts with sufficient specificity for the jury to determine which offense, if any, has been committed; (2) the number of acts committed

---

[2] Date of birth.

with sufficient certainty to support each count alleged by the prosecution; and (3) the general time period in which the acts occurred.

Jensen, 125 Wn. App. at 327. Because the child did "not describe the acts with sufficient specificity for the jury to determine which offenses, if any, [the defendant] committed," we reversed. Jensen, 125 Wn. App. at 328.

In contrast to Jensen, A.C. provided details and described with specificity the anal rape. Greening anally raped her while they were watching the movie Madagascar in a dimly lit room at the Blaine house. A.C. testified they were under a blanket on the couch, facing "toward" the television, Greening was directly behind her, and "[h]is head was next to mine." A.C. described what she was wearing and how Greening pulled down her pants and placed "his penis . . . [o]n the inside" of "[m]y butt." A.C. drew a diagram and described exactly where her younger siblings were sitting while Greening raped her.

Greening claims sufficient evidence does not support the verdict because his testimony is more credible than the testimony of A.C. We do not reweigh the evidence on appeal. State v. Ramos, 187 Wn.2d 420, 453, 387 P.3d 650 (2017). We give deference to the finder of fact in resolving conflicting testimony and weighing the evidence. State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). The credibility of witnesses and the weight the jury gives to the evidence are within the sole province of the jury. Witherspoon, 180 Wn.2d at 883.

Viewing the evidence in the light most favorable to the State, sufficient evidence supports the conviction of rape of a child in the first degree between January 1 and October 6, 2015.

2. Denial of Motion in Limine

Greening contends the court abused its discretion by denying his motion to exclude testimony that he engaged in anal sex with J.F. Greening asserts the evidence was unfairly prejudicial.

We will not disturb the trial court's rulings on a motion in limine absent an abuse of discretion. State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. Powell, 126 Wn.2d at 258. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. The trial court must balance the danger of prejudice against the probative value of the evidence. ER 403. We will overturn the court's determination "only if no reasonable person could take the view adopted by the trial court." State v. Posey, 161 Wn.2d 638, 648, 167 P.3d 560 (2007). The trial judge is in the best position to evaluate the prejudicial effect and relevancy of evidence. Posey, 161 Wn.2d at 648.

Greening argued that equating the "conduct between consenting adults with rape of a child was inflammatory and prejudicial." The State argued that because Greening "exclusively had anal intercourse with A.C.," the testimony that he was interested in having only consensual anal sex with J.F. was relevant and outweighed the prejudice. The court denied Greening's motion to exclude the testimony. The court ruled the testimony was "highly probative" and was not "unfairly prejudicial" as long as the State used the testimony for the limited purpose of establishing Greening's interest in anal sex.

12

The court did not abuse its discretion or deprive Greening of his right to a fair trial by admitting the testimony. The record shows Greening had " 'a meaningful opportunity to present a complete defense.' " Holmes v. South Carolina, 547 U.S. 319, 324, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006)[3] (quoting Crane v. Kentucky, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986)).

We affirm the jury conviction of one count of rape of a child in the first degree.

Schindler, J

WE CONCUR:

Leach, J.

Appelwick, C.J

---

[3] Internal quotation marks omitted.